IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARTER, FULLERTON & HAYES, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FEDERAL TRADE COMMISSION, ) <br> ) <br> Defendants. ) <br> ) | Civ. Action No. 07-01041(RCL) |

**DEFENDANT FEDERAL TRADE COMMISSION'S
REPLY IN FURTHER SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff's request that this Court deny the Federal Trade Commission's ("Commission") motion for summary judgment, order it to conduct another search for records, and direct it to submit a second *Vaughn* Index lacks merit and should be denied. There is no genuine issue as to any material fact, and the Commission is entitled to judgment as a matter of law. Its motion for summary judgment should be granted.

**I.    THE COMMISSION'S SEARCH WAS ADEQUATE**

Plaintiff attacks the adequacy of the Commission's search for responsive documents, because the Commission did not search each office specifically identified by Plaintiff in his request. Plaintiff's Opposition ("Pl. Opp."), pp. 8-9. Plaintiff's argument misconceives an agency's burden under the Freedom of Information Act ("FOIA") to search its records. The argument also fails to appreciate the robustness of the Commission's information management systems and the fact that the methodology of conducting the search was the result of a logical, rational decision making process.

The adequacy of an agency's search is not measured by whether the agency searched in the manner desired by the Plaintiff. The touchstone, as explained by the Court of Appeals for this Circuit, is whether the agency "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Campbell v. Department of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998). The Commission has done exactly that.

The Commission's declarations demonstrate that it has comprehensive and established procedures for responding to FOIA requests and that these procedures were followed in the present case. *See* Def. Exh. A, Declaration of Joan Fina (Aug. 9, 2007); Def. Exh. B, Declaration of Janet Evans (Sept. 11, 2007); Def. Exh. C, Supplemental Declaration of Joan Fina (Sept. 12, 2007). *See also Exxon Corp. v. FTC*, 466 F. Supp. 1088, 1094 (D.D.C. 1978) (if an agency's declarations "explain[] in reasonable detail the scope and method of the search," they are sufficient to support the adequacy of the search). In this case, the declarations show that Ms. Marasco, the assigned FOIA paralegal, searched the Commission's databases, which include the Matter Management System (MMS) and Consumer Sentinel.[1] Def. Exh. C, Fina Suppl. Decl. ¶ 2. The MMS is the Commission's primary information system and is used to track significant events for every Commission investigation, project, rulemaking proceeding, and adjudicative proceeding. *Id* at ¶ 1. The MMS is tightly integrated with the Commission's operations and allows staff to locate matters based on key words. *Id*. Ms. Marasco's search led her to ongoing work in the Commission's Office of Policy and Planning and Bureau of Consumer Protection. *Id.* at ¶ 2. Her search did not identify any other offices that had worked

---

[1] The FOIA staff access the Commission's various databases through an electronic portal known as "Business Objects." Def. Exh. C, Fina Decl. ¶ 1.

on matters responsive to Plaintiff's FOIA request. *Id*. The Commission, therefore, had no obligation to physically search for records in other offices identified by Plaintiff. *See Defenders of Wildlife v. U.S. Department of Interior*, 314 F.Supp.2d 1, 10 (D.D.C. 2004)("An adequate search may be limited to the places most likely to contain responsive documents.")(citation omitted). The conclusion that no other offices had worked on responsive matters is buttressed by the fact that the FOIA coordinators from the offices that were contacted did not identify any other organizations with which they had been working or that might otherwise have responsive documents. Def. Exh. A, Fina Decl. ¶¶ 9-10.

    The Commission followed established procedures by searching the Commission's computerized information systems to identify likely repositories of documents, consulting the FOIA coordinators in those areas to obtain responsive documents, asking the coordinators if there were other areas within the Commission that might have responsive documents, and relying on the knowledge and experience of the FOIA staff to know where responsive documents might be found. *See* Def. Exh., A, Fina Decl. ¶¶ 4-11. This is a reasonable approach and ensured a reasonable search of the Commission's records that complied with the requirements of the FOIA. *See Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982 ) ("[t]he issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate" (emphasis original)).

    Plaintiff argues, however, that the number of documents produced, at least relating to e-mail (Pl. Opp., p. 9) and the We Don't Serve Teens website, www.dontserveteens.gov (Pl. Opp., pp. 11-12), is indicative of an inadequate search. Plaintiff's objection is misplaced. The adequacy of an agency search cannot be determined by Plaintiff's belief that there should be more documents. The issue is whether the agency conducted an adequate search. *See Steinberg*

*v. Department of Justice*, 23 F.3d 548, 552 (holding that "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them" (quoting *SafeCard Services Inc. v. FTC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)); *Moayedi v. U.S. Customs and Border Protection*, --- F.Supp.2d ----, 2007 WL 2601408, *3-4 (D.D.C. Sept. 11, 2007); *Flowers v. IRS*, 307 F. Supp. 2d 60, 67 (D.D.C. 2004). In this regard, the Commission adequately demonstrated the adequacy of its search.[2] As further proof of this fact, the Commission submits the declaration of Ms. Janet Evans. Def. Exh. B.

     Ms. Evans is the FTC employee who is primarily responsible for development and maintenance of the FTC's "We Don't Serve Teens" website. Def. Exh. B, Evans Decl. ¶ 1. It is a consumer education website that spreads the message that serving alcohol to teens is unsafe, illegal, and irresponsible. *Id*. When Ms. Evans received Plaintiff's FOIA request from the FTC FOIA office, she contacted Plaintiff's representative to clarify the scope of the request. *Id*. at ¶ 2. Thereafter, Ms. Evans spent several hours searching her electronic and paper files to identify everything within the scope of the narrowed request, duplicated the responsive documents, and provided all of this information to the FTC's FOIA office. *Id*. These documents were then reviewed by the Commission's FOIA staff for release to Plaintiff. *See* Def. Exh. A, Fina Decl. Plaintiff cannot point to any objective evidence that the Commission's search for responsive documents regarding the "We Don't Serve Teens" website was inadequate.

---

[2] The Commission's e-mail retention policy undoubtedly affects the volume of e-mail records in the Commission. The policy encourages staff to discard e-mails when no longer needed, and all e-mail on the Commission's servers is automatically deleted after it has been in the system, unchanged, for 45-days, unless it is transferred to a permanent file. Def. Exh. C, Fina Suppl. Decl. ¶ 5. Routine turnover of staff is also a factor. Plaintiff identifies A. Agrawal as an FTC employee who should have had responsive documents. *See* Carter Declaration, ¶ 17. He resigned from the Agency more than one-year before Plaintiff submitted its FOIA request. Def. Exh. C, Fina Suppl. Decl. ¶ 6.

Plaintiff also searches for a material factual dispute based on the minor discrepancies between the pages counted in the Commission's transmittal letters and the number of pages tallied in the Commission's declaration. Pl. Opp., pp. 9-11. In its summary judgment motion, the Commission explained that these discrepancies were due to clerical or mathematical errors or resulted in trying to account for duplicates. Def. Exh. A, Fina Decl., n.2. Plaintiff accuses the Commission of "soft peddl[ing]" the discrepancies (Pl. Opp., pp. 9-10) and avers that it was short changed documents. *Id*. at 11. We submit that this is a non-issue, and to obviate any concern the Court may have, the Commission, on or about September 10, 2007, provided Plaintiff with a complete electronic copy of all documents contained in the Commission's FOIAXpress database. Def. Exh. C, Fina Decl. ¶ 4. The organizational structure of the electronic file provided to Plaintiff mirrors that within the Commission's FOIAXpress systems. *Id*.; *see* Def. Exh. A, Attachment 3 (identifying FOIAXpress structure). At this point, there can be no dispute that Plaintiff has received redacted copies of all the responsive records the Commission located in this matter.[3]

Finally, Plaintiff points to the Commission's discovery of one document, a legal memorandum consisting of 71-pages, of which 70 were withheld under Exemption (b)(5), as evidence of the inadequacy of the Commission's search.[4] Pl. Opp., p. 12. The Commission admits that it overlooked *one* document during the administrative processing of Plaintiff's FOIA request and that it found the document when it was preparing its response to Plaintiff's

---

[3] Plaintiff also derides the Agency's *Vaughn* Index as confusing in its non-sequential numbering. Pl. Opp. p. 15, n.5. Given the structure of the FOIAXpress database, the Commission's approach is logical and reasonable.

[4] Plaintiff's Opposition indicates that the Commission found "71 documents." In fact, the Commission found one document consisting of 71-pages.

Complaint. As soon as the Commission found the document, it identified the document and notified Plaintiff that it was withholding 70 pages under Exemption (b)(5). The Commission released one page.

Considering the hundreds of documents and the thousands of pages provided to Plaintiff, the Commission's missing one 71-page document does not undercut the Commission's approach in responding to Plaintiff's FOIA request. This is especially true since drafts of portions of the 70-pages document were included in the Commission's initial collection efforts. *See* Def. Exh. A, Attachment 6 (*Vaughn* Index), p. 9 ((Wine Amicus Memo pp. 113-130, 131-170), p. 12 (Internet Wine Memos etc. pp. 1-21), p. 16 (Advocacy Preliminary Research pp. 1-40). Further, the Commission's acknowledgement of the document should be further evidence of its good faith in attempting to comply with its obligations under the FOIA.

## II. THE COMMISSION'S VAUGHN INDEX IS SUFFICIENT TO ALLOW THE COURT TO TEST THE RELEASABILITY OF THE DOCUMENTS AND ADEQUATELY SUPPORTS THE COMMISSION'S CLAIMED EXEMPTIONS

Plaintiff's Opposition disputes the form and adequacy of the Commission's *Vaughn* Index. Pl. Opp., p. 12. Plaintiff argues that the index is inadequate because it does not identify by a specific name the author of a particular document or the intended recipient.[5] Plaintiff's argument is factually wrong. The vast majority of entries listed in the index do, in fact, identify the authors as "staff attorneys" or as a "senior FTC employee." To the extent Plaintiff is arguing that the index must identify the given name of the attorney or employee, its argument is fatally flawed. The Court's determination as to whether the Commission properly invoked an exemption does not depend on whether "John Smith, Staff attorney at the FTC" as opposed to

---

[5] Plaintiff's Opposition does not contest the adequacy of the index as to the Commission's invocation of Exemption (b)(2) and (b)(6) despite the alleged deficiency of not specifically identifying the author and the recipient.

"an FTC staff attorney" drafted a policy recommendation or a legal opinion. *See Information Acquisition Corp. v. Department of Justice*, 444 F. Supp. 458, 462 (D.D.C. 1978) ("the degree of specificity of itemization, justification, and correlation required in a particular case will . . . depend on the nature of the document at issue and the particular exemption asserted").

There is no set formula for a *Vaughn* Index. It is the function, not the form that is important. *Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1998); *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994) (holding that the justification for withholding provided by agency may take any form as long as agency offers "reasonable basis to evaluate [it]s claim of privilege"); *Vaughn v. United States*, 936 F.2d 862, 867 (6th Cir. 1991) ("[a] court's primary focus must be on the substance, rather than the form, of the information supplied by the government to justify withholding requested information"). An agency's *Vaughn* Index is sufficient if it "enables the court to make a reasoned independent assessment of the claim of exemption." *Jones*, 41 F.3d at 242 (quoting *Vaughn*, 936 F.2d at 866-67).

The Commission's index meets this purpose. A significant number of the documents at issue are drafts of letters sent to legislators, handwritten deliberative notes relating to speeches or possible recommendations, and staff recommendations to the Commission. It is clear that Plaintiff is not entitled to these documents. *See, e.g., National Wildlife Federation v. U.S. Forest Service*, 861 F.2d 1114, 1122 (9th Cir. 1988) ("[t]o the extent that [the requester] seeks through its FOIA request to uncover any discrepancies between the findings, projections, and recommendations between the draft[s] prepared by lower-level [agency] personnel and those actually adopted, . . . it is attempting to probe the editorial and policy judgments of the decisionmakers."); *Marzen v. HHS*, 825 F.2d 1148, 1154 (7th Cir. 1987) ("exemption protects not only the opinions, comments and recommendations in the draft, but also the process itself.");

*Dudman Communications Corp. v. Department of the Air Force*, 815 F.2d 1565, 1569 (D.C. Cir 1987) ("the disclosure of editorial judgments -- for example, decisions to insert or delete material or to change a draft's focus or emphasis -- would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work"). The Commission's *Vaughn* Index is sufficient to allow the Court to test the applicability of the claimed exemption. Nothing more is required.

   Plaintiff also derides the Commission's "descriptive" entries of its *Vaughn* Index, taking issue with the fact that the index frequently repeats the same description of the documents. Pl. Opp., n.4. Plaintiff's claims are misplaced. Given that the documents are of the same type, it is not surprising that the descriptions are similar. *See, e.g., Landmark Legal Foundation v. IRS.*, 267 F.3d 1132, 1138 (D.C. Cir. 2001) (chiding plaintiff for his criticism of repetitive nature of *Vaughn* Index, given that "thousands of documents belonged in the same category"); *Coldiron v. Department of Justice*, 310 F. Supp. 2d 44, 52 (D.D.C. 2004) (explaining that repetition in *Vaughn* Index is to be expected, especially when "each redacted passage concerns the same, classified subject").

   At bottom, Plaintiff's dissatisfaction with the *Vaughn* Index stems from the fact that the Commission did not prepare a *Vaughn* Index that discloses some of the exempt information that Plaintiff seeks. Plaintiff's mere dissatisfaction does not undercut the adequacy of the index to perform its primary function of allowing this Court "to make a rational decision [about] whether the withheld material must be produced without actually viewing the documents themselves . . . [and] to produce a record that will render [its] decision capable of meaningful review on appeal." *King v. Department of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987); *Maine v. Department of the Interior*, 298 F.3d 60, 65 (1st Cir. 2002); *Rugiero v. Department of Justice*, 257 F.3d 534, 544

(6th Cir. 2001) (explaining that *Vaughn* Index enables court to make "independent assessment" of agency's exemption claims), *cert. denied*, 534 U.S. 1134 (2002).

**III.    THE COMMISSION'S CLAIMED FOIA EXEMPTIONS ARE PROPER**

Plaintiff does not offer any argument as to the propriety of the claimed exemptions, apart from certain documents in the "Maureen Olhausen" file. *See* Pl. Opp., pp. 12-14. This file contains 227 pages. Def. Exh. A, Attachment 3. Of these 227 pages the Commission withheld approximately 32 pages under Exemption (b)(5). Several of the 32 withheld pages had segregable material, which the Commission released after redacting the exempt material. Plaintiff argues that the material that was withheld or redacted is not pre-decisional or deliberative. Pl. Opp., 16. Plaintiff's argument is ill-founded.

The specific documents at issue include the hand-written notes of a senior FTC employee. One group of documents was created as "deliberative aids" in deciding the final content of a Commission sanctioned speech to be given by the employee. S*ee* Def. Exh. A, Attachment 6, pp. 2-3 (*Vaughn* Index, "Maureen Olhausen" directory, pp. 1-7, 16-17, 24-26). It is clear that these documents are deliberative in nature and are antecedent to sanctioned Commission action, *i.e.* presentation of a speech. The Commission, therefore, properly invoked Exemption (b)(5) to withhold these documents. *See Judicial Watch*, 102 F. Supp. 2d 6, 16 (D.D.C. 2000) (protecting Attorney General's handwritten predecisional notes from meeting on campaign finance task force investigation); *cf. Conoco Inc. v. Department of Justice*, 687 F.2d 724, 727 (3d Cir. 1982) (rejecting the contention that only records "circulated within the agency" may be withheld under Exemption 5).

The second group of documents was created during wine institute meetings to aid in the employee's deliberation and formulation of recommendations to the Commission with respect to

9

possible official action.  *See* Def. Exh. A, Attachment 6, pp. 4-5 (*Vaughn* Index, "Maureen Olhausen" directory, pp. 120-121, 123-125, 145-148, 182-184).  Again, it is clear, that the documents are deliberative in nature, used in preparing a recommendation to the Commission and are, therefore, antecedent to a Commission decision.  *See Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) ("The deliberative process privilege protects materials that are both predecisional and deliberative." (citing *Petroleum Info. Corp. v. United States Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992))).

Further, the notes taken at the wine institute meeting were not intended as a verbatim transcript of the meeting and contain the employee's "thoughts and impressions" of these meetings to include the employee's identification of selected facts.  The very act of distilling the significant facts from the insignificant facts presented during these meetings, constitutes an exercise of judgment by Commission personnel.  *Montrose Chem. Corp. v. Train,* 491 F.2d 63, 68 (D.C. Cir. 1974).  Such "selective" facts are entitled to protection as deliberative materials because their release would "permit indirect inquiry into the mental processes" of the agency.  *Williams v. United States Department of Justice*, 556 F. Supp. 63, 65 (D.D.C. 1982).   This would unduly "expose" predecisional agency deliberations.  *Mead Data Central Inc  v. Department of the Air Force,*  566 F.2d 242, 256 (D.C. Cir, 1977).  This merely confirms that the documents "could reasonably be construed as predecisional and deliberative." *See City of Va. Beach v. Department of Commerce*, 995 F.2d 1247, 1255  (4th Cir. 1993).

IV.   **THE FINA DECLARATIONS ESTABLISH THAT ALL SEGREGABLE MATERIAL WAS RELEASED**

As a general rule, "[t]he segregability requirement applies to all documents and exemptions in the FOIA." *Hornbostel v. Department of the Interior*, 205 F. Supp. 2d 21, 34 (D.D.C. 2003) (quoting *Center for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984). To meet this requirement, agency declarations must address the issue "with reasonable specificity." *Animal Legal Defense Fund v. Department of the Air Force*, 44 F. Supp. 2d 295, 301 (D.D.C. 1999) (citing *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578 (D.C. Cir 1996). The Commission's declarations meet this standard.

Ms. Fina specifically addresses the issue of segregability and indicates that each page of each document was assessed for releasable information and carefully correlates the exemptions asserted with the portions of the documents to which they apply. Def. Exh. A, ¶¶ 27 – 28. For example, the Commission released consumer complaints after redacting personal consumer information under Exemption (b)(6). *Id*. at ¶¶ 26, 28. In a similar manner the Commission released factual material from documents that it withheld under Exemption (b)(5), where the factual material was not inextricably intertwined with the staff's legal analysis. *Id*. at ¶ 28. As explained by Ms. Fina, if the factual material was so intertwined, release of it would betray the staff's thought processes or the manner in which they weighed or considered the facts. *Id*. The Commission has no obligation to provide greater detail regarding the documents, since that would "compromise the secret nature of * * * exempt material." *See Mead Data Central v. Department of the Air Force,* 566 F.2d 242, 261 (D.C. Cir. 1977).

Nevertheless, Plaintiff argues that the Commission failed to release all segregable material and points to the fact that the Commission withheld the name of the state legislators on

11

the drafts which were withheld pursuant to Exemption (b)(5). *See* Pl. Opp., p. 17. This argument is flawed for two reasons. First, the Commission is not required to engage in "the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data Central*, 566 F.2d at 261 n.55. Release of a legislator's name on an otherwise redacted draft document would have minimal or no informational content. Second, the Commission provided Plaintiff with the final versions of the letters that were sent to the legislators. Def. Ex. A, Fina Decl. ¶ 24. Plaintiff, therefore, knows to whom the Commission sent policy letters and Plaintiff's ability to seek additional information from those legislators under state FOIA statutes is in no way impaired by the Commission not extracting the names from documents that were otherwise withheld in their entirety. In any event, the impact on Plaintiff's ability to further its investigative efforts is irrelevant to whether the Commission properly invoked an exemption. *Cf. National Association of Retired Federal Employees (NARFE) v. Horner,* 879 F.2d 873, 875 (D.C. Cir 1989) (holding that agencies may neither distinguish between requestors nor limit the use to which disclosed information is put and an analysis of the consequences of a disclosure cannot turn on the identity or purposes of the requestor).

      Plaintiff also contests the Commission's segregability determination by attacking its declarations as conclusory and arguing that Ms. Fina has no basis for claiming that a segregability determination was made on each document during initial processing of Plaintiff's request, during the course of the administrative appeal, and, again, during the preparation of the *Vaughn* Index. Pl. Opp., p. 18. However, Ms. Fina states that her declaration is based "on [her] review of the official files and records of the Commission, [her] personal knowledge, or on the basis of information acquired through the performance of [her] official duties." Def. Ex. A, ¶ 3.

Given Ms. Fina's role in the administration of the Commission's FOIA program, including her supervision of Ms. Marasco, the paralegal assigned to process Plaintiff's FOIA request, Ms. Fina's declaration is sufficient. *See* Def. Exh. A, Fina Decl. ¶¶ 1, 3, 8; *Carney v. Department of Justice*, 19 F.3d 814 (2nd Cir 1994) ("[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search"). Regardless, the Commission submits Ms. Fina's Supplemental Declaration. Def. Exh. C.

This supplemental declaration confirms that Ms. Marasco reviewed each page of each document for segregability. Def. Exh. C, Fina Suppl. ¶ 2. It confirms that Ms. Fina personally reviewed every page of every document for segregability in preparation of the *Vaughn* Index. *Id*. at ¶ 3. This fact is also apparent from the level of detail of the *Vaughn* Index. The Commission's declarations discuss segregability "with reasonable specificity" so as to assure the Court that all reasonably segregable portions of the responsive documents have been released to Plaintiff.

## CONCLUSION

For the reasons set forth both above and in the Commission's initial memorandum in this matter, this Court should grant the Commission's Motion for Summary Judgment.

Date: September 14, 2007

Respectfully submitted,


/s/ Jeffrey A. Taylor /dvh
_____
JEFFERY A. TAYLOR, D.C. Bar # 498610
United States Attorney


/s/ Rudolph Contreras /dvh
_____
RUDOLPH CONTERAS, D.C. Bar # 434122
Assistant United States Attorney


/s/ Beverly M. Russell
_____

| | |
|---|---|
| Of Counsel: | BEVERLY M. RUSSELL, D.C. Bar # 454257 |
| WILLIAM BLUMENTAHL | Assistant United States Attorney |
| General Counsel | U.S. Attorney's Office for the District |
| | of Columbia, Civil Division |
| JOHN F. DALY | 555 4th Street, N.W., Rm E-4915 |
| Deputy General Counsel for Litigation | Washington, D.C. 20530 |
| | Ph:  (202) 307-0492 |
| DAVID C. SHONKA | Fax:  (202 514-8780 |
| Assistant General Counsel for Litigation | E-Mail:beverly.russell@usdoj.gov |

CERTIFICATE OF SERVICE

I certify that the foregoing **Defendant's Reply in Support of its Motion for Summary Judgment** was served upon Plaintiff by the Court's Electronic Case Filing System, to:

John E. Drury
Law Offices of John E. Drury, PC
1900 L St., N.W., Suite 303
Washington, D.C. 20036
jedrury@aol.com

on this 14th day of September, 2007.

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARTER, FULLERTON & HAYES, LLC )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FEDERAL TRADE COMMISSION )<br>)<br>Defendants. )<br>_____) | Civ. Action No. 1:07CV01041 (RCL) |

### DECLARATION OF MS. JANET EVANS

I, Janet Evans, declare the following to be a true and correct statement of facts:

1. I am an employee of the Federal Trade Commission (FTC). I work in the Commission's Bureau of Consumer Protection, where I am primarily responsible for the alcohol program. One of my duties was the development of the We Don't Serve Teens website, www.dontserveteens.gov, which is a consumer education website that spreads the message that serving alcohol to teens is unsafe, illegal, and irresponsible. I am also responsible for updating the site as appropriate.

2. When I received Plaintiff's FOIA request from the FTC FOIA office, I contacted Plaintiff's representative via e-mail and discussed the scope of the request. Thereafter, I spent several hours searching my electronic and paper files to identify everything within the scope of the narrowed request, duplicated the responsive documents, and sent them to the FTC's FOIA office.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is e and correct. Executed on September 11, 2007 in the City of Washington, D.C.

_____
Janet Evans

Defense Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARTER, FULLERTON, & HAYES, LLC )
)
      Plaintiff, )
)
v. ) Civ. Action No. 1:07CV01041 (RCL)
)
FEDERAL TRADE COMMISSION )
)
      Defendant )
_____)

## SUPPLEMENTAL DECLARATION OF MS. JOAN FINA

I, Joan Fina, declare the following to be a true and correct statement of facts based on my review of the official files and records of the Federal Trade Commission, my personal knowledge, or on the basis of information acquired by me through the performance of my official duties:

1. The Commission maintains a variety of electronic databases, including a Matter Management System (MMS) and Consumer Sentinel, which can be searched by key word using an electronic portal known as "Business Objects." The MMS is the Commission's primary information system and is used to track significant events for every Commission investigation, project, rulemaking proceeding, and adjudicative proceeding. The MMS is tightly integrated with the Commission's operations and staff. Searching the databases through Business Objects allows the FOIA staff to identify all the offices within the Commission that may have documents responsive to a FOIA request.

2. Ms. Marasco, the FOIA paralegal assigned to Plaintiff's request, searched the Commission's electronic databases using Business Objects. Ms. Marasco's search identified

Defense Exhibit C

ongoing work related to alcohol in the Office of Policy and Planning and the Commission's Bureau of Consumer Protection. Her search did not identify any other offices that had worked on matters responsive to Plaintiff's FOIA request. After Ms. Marasco received the responsive documents from the identified offices and obtained possibly responsive documents from Consumer Sentinel, she reviewed each page of each document for segregability.

3. In developing the *Vaughn* Index, I, again, personally reviewed each page of each document within the FOIAXpress database for segregability.

4. To obviate any possible concerns about Plaintiff's argument that the Commission had failed to produce all the responsive documents it had collected and reviewed in this matter, on or about September 10, 2007, the FOIA Office provided Plaintiff with a complete electronic copy of all documents, redacted as appropriate, contained in the Commission's FOIAXpress database relating to his request. The organizational structure of the electronic file provided to Plaintiff mirrors the structure contained within FOIAXpress system.

5. The Commission has an e-mail retention policy that encourages staff to discard all e-mail when no longer needed, and all e-mail on the Commission's servers is automatically deleted after it has been in the system, unchanged, for 45-days, unless it is transferred to a permanent file.

6. Mr. Carter's declaration identified A. Agrawal as a Commission employee. I know that Mr. Agrawal is no longer employed by the Commission. In checking with the human resources office, I was informed that he resigned from the Commission in July 2005. Ms. Marasco is currently living and working in Japan. The Commission was unable to obtain a declaration from her, but through e-mail, I verified the actions she took in processing Plaintiff's FOIA request.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 12, 2007, in the city of Washington, D.C.

Joan Fina
Supervisory Attorney,
Federal Trade Commission