## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARTER, FULLERTON & HAYES, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-1041 (RCL) |
| ) | |
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT FEDERAL TRADE COMMISSION'S
## RENEWED MOTION FOR SUMMARY JUDGMENT

Following the Court's decision on October 25, 2007, and guided by such, Defendant,

Federal Trade Commission, by and through its undersigned counsel, hereby renews its motion

for summary judgment pursuant to Fed. R. Civ. P. 56.  Defendant submits that the pleadings and

record show that there is no genuine issue as to any material fact and that Defendant is entitled to

a judgment as a matter of law.

Pursuant to Local Rules 7(a), (c), and (h) respectively, a memorandum of points and

authorities supporting this motion, a statement of material facts as to which there is no genuine

dispute, and a proposed order consistent with the relief requested herein are attached.

Date: December 5, 2007

Respectfully Submitted,


/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


/s/ Rudolph Contreras /dvh
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/ Beverly M. Russell
_____

| | |
|---|---|
| Of Counsel: | BEVERLY M. RUSSELL, D.C. Bar #454257 |
| WILLIAM BLUMENTAHL | Assistant United States Attorney |
| General Counsel | U.S. Attorney's Office for the District |
| | of Columbia, Civil Division |
| JOHN F. DALY | 555 4th Street, N.W., Rm. E-4915 |
| Deputy General Counsel for Litigation | Washington, D.C. 20530 |
| | Ph: (202) 307-0492 |
| DAVID C. SHONKA | Fax: (202) 514-8780 |
| Assistant General Counsel for Litigation | E-Mail: beverly.russell@usdoj.gov |

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARTER, FULLERTON & HAYES, LLC        )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )        Civil Action No. 07-01041 (RCL)
                                      )
FEDERAL TRADE COMMISSION,             )
                                      )
        Defendant.                    )
_____ )

**DEFENDANT FEDERAL TRADE COMMISSION'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT**

On October 25, 2007, the Court granted in part and denied in part Defendant's ("FTC" or

"Commission") Motion for Summary Judgment.  The Court denied Defendant's motion as to its

segregability analysis of documents withheld in full pursuant to FOIA Exemption 5 but

otherwise granted the Commission's motion.  The Court ordered Defendant to submit a Renewed

Motion for Summary Judgment containing a more detailed explanation as to why no factual

portions of those documents withheld in full under Exemption 5 could be segregated.  Pursuant

to the Court's Order, Defendant submits this Memorandum of Points and Authorities in Support

of its Renewed Motion for Summary Judgment.

As described in its initial Memorandum of Points and Authorities in Support of its

Motion for Summary Judgment, the FTC loaded all potentially relevant documents into a

FOIAXpress database containing 23 distinct directories.  Def. Exh. D, Second Supplemental

Declaration of Joan Fina (Dec. 3, 2007), ¶ 1 (attached hereto).  Where possible, this

Memorandum examines groups of similar documents with similar factual content, regardless of

their location in a particular directory, to explain why the factual content was not segregable.

Fifteen of the twenty-three directories of the FOIAXpress database contain documents that were withheld in their entirety under Exemption 5. *Id.* The remaining eight directories do not contain documents that are subject to the Court's order.[1] *Id.*

## I.    LEGAL STANDARD FOR SEGREGABILITY ANALYSIS

"Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt" from disclosure under the FOIA.  5 U.S.C. § 552(b).  To demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." *Mead Data Center, Inc. v. Department of the Air Force,* 566 F.2d 242, 261 (D.C. Cir. 1977).  All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated.  *Armstrong v. Executive Office of the President,* 97 F.3d 575, 578-79 (D.C. Cir. 1996) (citations omitted).

Given the statutory requirement for segregability, the deliberative process privilege is ordinarily inapplicable to purely factual matters or to factual portions of otherwise deliberative memoranda.  *See, e.g., EPA v. Mink*, 410 U.S. 73, 91 (1973).  However, there are two circumstances under which an agency may withhold factual material in an otherwise deliberative document.

The first circumstance occurs when the author of a document selects specific facts out of a larger group of facts as this very act is deliberative in nature.  *See Montrose Chemical Corp.  v. Train*, 491 F.2d 63 (D.C. Cir 1974).  The act of distilling significant facts from insignificant

---

[1] Six of the 23 directories were released in their entirety:  "Chris Grengs-Public;" "Reports;" "Greg Luib-Believed Public;" "Inter-Agency Corr;" "Janet Evans E-mails;" and "New Hampshire Power Points."  The "Consumer Complaints" directory only invoked Exemption (b)(6).  The "Draft Advocacy Comments" directory contains only duplicates of documents that were otherwise withheld under Exemption 5 and as such, are not separately analyzed.

facts, constitutes an exercise of judgment by agency personnel. *Id.* at 68. Such "selective" facts are entitled to the same protection as that afforded to purely deliberative material, as their release would "permit indirect inquiry into the mental processes" of agency personnel. *Williams v. Department of Justice*, 556 F. Supp. 63, 65 (D.D.C. 1982). Further, release of such facts would "expose" predecisional agency deliberations. *Mead Data Center, Inc. v. Department of the Air Force,* 566 F.2d 242, 256 (D.C. Cir. 1977).

The second circumstance occurs when factual information is "inextricably intertwined with exempt portions" such that disclosure of the factual information would expose or cause harm to the agency's deliberations. *Mead Data*, 566 F.2d at 260. If revealing factual information is tantamount to revealing the agency's deliberations, then the facts may be withheld. *See, e.g., Wolfe v. Department of Health and Human Services*, 839 F.2d at 768, 774-76 (D.C. Cir. 1988).

In addition to these two circumstances, an agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data,* 566 F.2d at 261 n. 55. To justify segregating nonexempt factual material, the segments of information, if disclosed, must have some meaning. *See Givener v. Executive Office for United States Attorneys*, No. 99-3454, slip op. at 17-18 (D.D.C. Mar. 1, 2001) (deciding that agencies may withhold nonexempt information if it amounts to "essentially meaningless words and phrases" (internal citations omitted))(attached hereto).

## II.    FACTS CONTAINED IN WORK PRODUCT DOCUMENTS NEED NOT BE SEGREGATED

Of the fifteen directories containing documents that were withheld in their entirety under

Exemption 5, five of the directories contain documents properly withheld under the work

product aspect of Exemption 5.  Def. Exh. D, Fina Sec. Suppl. Dec. ¶ 2.  They are as follows[2,3] :

| Directory | Pages |
|---|---|
| Wine Amicus Memo | 1-12, 113-130, 131-170 |
| Internet Wine Memos etc | 1-21 |
| Advocacy Preliminary Research | 1-40 (Entire directory) |
| Internal Memo | 2-71 (Entire directory except for page 1, which was released) |
| Internet Wine Correspondence | 147, 148-163, 218-233 (another  version of pages 148-163), 235-236 |

This Circuit has held that, as to work-product documents, an agency is not required to

conduct any segregability analysis.  This is so because "factual material is itself privileged when

it appears within documents that are attorney work-product.  If a document is fully protected as

work product, then segregability is not required." *Judicial Watch, Inc. v. Dep't of Justice*, 432

F.3d 366, 371 (D.C. Cir. 2005); *Martin v. Office of Special Council, Merit Systems Protection

Board*, 819 F.2d 1181, 1187 (D.C. Cir. 1987) ("[t]he work-product privilege simply does not

distinguish between factual and deliberative material. * * *  [I]f the work-product privilege

protects the documents  * * *, Exemption (b)(5) protects them as well, regardless of their status

---

[2] The *Vaughn* Index did not specifically identify the Wine Amicus Memo, pages 1-12, as work product.  However, the document provides legal analysis of court decisions, their application to the constitutionality of state regulation, discusses whether the Commission should file *amicus* briefs in then pending litigation, and discusses the possible contents of the brief.  The document is entitled to protection as work product.    Def. Exh. D, Fina Sec. Suppl. Dec. n. 2.

[3] The *Vaughn* Index did not specifically identify the Internal Wine Correspondence as work product.  However, each of these documents provides legal analysis of court decisions, their application to the constitutionality of state regulation, and discusses whether the Commission should file *amicus* briefs in then pending litigation and are entitled to protection as work product. Def. Exh. D, Fina Sec. Suppl. Dec. n. 3.

as 'factual' or 'deliberative'"). This is true because "even the factual material segregated from attorney work-product is likely to reveal some of the attorney's tactical and strategic thoughts." *Mervin v. FTC*, 591 F.2d 821, 826 (D.C. Cir. 1978). As this Circuit has found:

> In the process of administrative decision making, it is likely that factual documents will be developed, for example, by lay personnel without decisionmaking or advisory authority, which can be segregated from deliberative material without difficulty, and with minimal danger that the deliberative process will thereby be excessively exposed. On the other hand, an attorney's written product in preparing for litigation, even if factually oriented, seldom can be separated from his tactical and strategic thinking. As a result, the government's assertion that an attorney's work-product is not segregable permits a court to apply a broader privilege than in those cases where the work-product privilege is not involved.

*Id*. at 827. Based on the above, the Commission properly withheld under Exemption 5 the entirety of the documents constituting work product.

## III.    FACTUAL MATERIAL CONTAINED IN STAFF RECOMMENDATIONS TO THE COMMISSION OR SENIOR FTC OFFICIALS AND ASSOCIATED DRAFT DOCUMENTS ARE NOT SEGREGABLE

In *Granholm v. Heald* , the Supreme Court struck down state law that discriminated against direct shipment of alcohol by out-of-state producers in favor of in-state producers. The Court held that state law violates the Dormant Commerce Clause if it mandates "different treatment of in-state and out-of-state economic interests that benefit the former and burden the latter." *Granholm v. Heald*, 544 U.S. 460, 472 (2005). This decision affected a number of states' regulatory schemes pertaining to interstate shipments of alcohol and required those states to amend their laws to conform to *Granholm*. Def. Exh. D, Fina Sec. Suppl. Dec. ¶ 3.

The *Granholm* decision presented a significant opportunity for the Commission to advocate its position with respect to these distribution schemes. The FTC has a long-standing interest in state alcohol distribution laws and their effects on competition. To this end, FTC staff

made numerous recommendations to the Commission. These staff recommendations concerned official letters to various legislators who were considering amendments to their state alcohol distribution laws in light of *Granholm*. Staff made specific recommendations to the Commission as to sending advocacy letters to legislators in Florida, and Ohio. Included with these recommendations, were drafts of letters that the staff proposed to be sent. *Id*. at ¶ 4.

In conjunction with a letter to a Florida legislator, the FTC authorized a press release. In making this release, a senior FTC official edited drafts of the press release that were prepared by a staff attorney. Again, in concert with the FTC's overall position on direct shipments, staff recommended publication of an internal report on anticompetitive barriers to e-commerce affecting online wine sales. *Id*. at ¶ 5.

The below table identifies the location on the *Vaughn* index of the recommendations to send letters to state legislators and the associated drafts. The draft press release and the recommendation with respect to the e-commerce report, are parenthetically identified. *Id*. at ¶ 6.

| Directory | Pages |
| --- | --- |
| Janet Evans Memos, Drafts, Other | 3-15 |
| Internal Drafts, Corr. regarding drafts | 1-125, 128-153, 155-218, 226-442, 448-483, 498-522, 526-656 |
| Florida Direct Shipping Letter | 1-25* |
| Ohip Direct Shipping Corresp. | 1-10*, 35-43 (duplicates pp. 2-10)* |
| California Beer Franchise Memo and Corre. | 1-14*, 22-31*, 32-42, 65-78*, 90-97 |
| Internet Wine Correspondence | 238-246, 260-267, 270-278*, 288, 295-303*, 308-316*, 321-330*, 335-343* |
| Wine Amicus Memo | 171-188*, 205-221*, 229-233*, 235-246*, 258-278* |
| Internal Drafts, Corr. regarding drafts | 126-127, 154, 219-225, 443-447, 484, 523-525 |
| Internal Drafts, Corr. regarding drafts | 485-497 (draft press release) |
| Wine Report and Memos | 3-14, 69-74 (duplicates pages 3-8, recommendation as to release of an internal report) |
| * Draft letter that includes a staff recommendation to the Commission with respect to release. | |

The factual material contained within these recommendations, draft letters, draft press release, and recommendation concerning release of the e-commerce report are of a similar nature. The factual information describes the impact on consumers of allowing direct wine shipments to customers from out-of-state sources. The factual information specifically addresses the impact on: the variety of product that would be available to customers; prices paid by customers; and the convenience of purchase. The factual information also describes the impact on state policy objectives, and specifically identifies the impact on the collection of taxes and on underage consumption of alcoholic beverages. *Id*. at ¶ 7.

The factual information contained in the draft documents and the recommendations is inextricably intertwined with the deliberative process. Revealing the factual data relied upon by the Commission's staff would enable the reader to deconstruct the staff's thought processes and deliberations, and reveal the ultimate recommendation and expose the analysis of the staff prior to the Commission making a decision. *Id*. at ¶ 8.

The draft nature of the majority of the documents in this category provides an additional reason for withholding them. By comparing factual materials within drafts to final versions available to the public, one can reconstruct the decisionmaking process by comparing factual material in the two versions that was kept, moved, or edited. "Materials that allow the public to reconstruct the predecisional judgments of the administrator are no less inimical to Exemption 5's goal of encouraging uninhibited decisionmaking than materials explicitly revealing his or her mental processes." *National Wildlife Federation v. U.S. Forest Service*, 861 F.2d 1114, 1122 (9th Cir. 1988). Quite simply, withholding drafts of documents in their entirety is essential to the protection of the deliberative process. It also serves to avoid public confusion as to the agency's decisions as opposed to agency official's opinions or recommendations. *See Russell v.*

7

*Department of Air Force,* 682 F.2d 1045, 1048-49 (D.C.Cir.1982) (withholding documents to prevent public from "misconstruing" officer's views as agency views); *Fisher v. United States Dep't of Justice,* 772 F.Supp. 7, 10-11 (D.D.C.1991) (withholding documents "to prevent public confusion that might be caused by disclosure of reasons and rationales that were not ultimately the grounds for the agency's action"), *aff'd,* 968 F.2d 92 (D.C.Cir.1992).

As an example, some of the draft legislator letters are different versions of the letter that was ultimately sent to the legislators. *Id.* at ¶ 10. An advocacy letter was sent to the Honorable Paula Dockery of Florida. As identified in the FTC's *Vaughn* Index, the final letter was released to the Plaintiff. *See* Florida Direct Shipping Letter, pp 27-38. Drafts of this letter are contained at (*see id.*):

| Directory | Pages |
|---|---|
| Janet Evans Memos, Drafts, Other | 3-15 |
| Wine Amicus Memo | 177-188 |
| Internal Drafts, Corr. regarding drafts | 498-510, 511-522, 526-538, 539-551, 552-564, 565-576, 577-591, 592-603, 604-619, 620-631, 632-644, 645-656 |
| Florida Direct Shipping Letter | 2-13, 14-25 |

An advocacy letter was sent to the Honorable Wesley Chesbro of California. As identified in the FTC's *Vaughn* Index, the final letter was released to the Plaintiff. See California Beer Franchise Memo and Corre., pp 47-55. Drafts of this letter are contained at (*see id.*):

| Directory | Pages |
|---|---|
| California Beer Franchise Memo and Corre. | 7-14, 23-31, 32-42, 71-78, 90-97 |

An advocacy letter was sent to the Honorable Eric Fingerhut of Ohio. As identified in the FTC's *Vaughn* Index, the final letter was released to the Plaintiff. *See Ohio Direct Shipping Corresp.,*

pp. 14-24.  Drafts of this letter are contained at (*see id*.):

| Directory | Pages |
|---|---|
| Wine Amicus Memo | 211-221 |
| Internal Drafts, Corr. regarding drafts | 297-307, 308-319, 320-330, 331-343, 345-356, 357-367, 368-380, 381-392, 393-404, 405-416, 417- 428, 429-442, 448-459, 460-471, 472-483 |

Similarly, the draft press releases contain extensive edits that include handwritten notes and extensive strikeouts of text reflecting the thought process of a senior FTC official in deciding what information should be publicly released.  The edits were incorporated in the publicly released version of the document.  *See* http://www.ftc.gov/opa/2006/04/floridawine.shtm.  *Id*. at ¶ 11.

Because the very process by which a draft evolves into a final document can itself constitute a deliberative process warranting protection, the draft itself is properly exempt from disclosure.  *See, e.g., National Wildlife Federation v. U.S. Forest Service*, 861 F.2d 1114, 1122 (9th Cir. 1988).  The FTC properly withheld the entirety of the draft documents and their associated recommendations.

## IV.     FACTUAL INFORMATION CONTAINED IN REMAINING DOCUMENTS IS NOT SEGREGABLE

The FTC, in addition to work-product, draft documents, and recommendations, also withheld a number of miscellaneous documents in their entirety.  Def. Exh. D, Fina Sec. Suppl. Dec. ¶ 13.  These include legal memoranda, staff attorney notes taken during various meetings, notes prepared to aid in the delivery of a Commission sanctioned speech, as well as other miscellaneous documents.  *Id*.

A. <u>Legal Memoranda</u>.  The following documents, which were withheld in their entirety, contain legal analysis (*see id*. at ¶ 14):

| Directory | Pages |
|---|---|
| Chris Grengs-Memos-etc | 1-3 (legal analysis of *Granholm* decision and recommendation as to release a report cited by the Court) |
| Internet Wine Memos etc | 22-23 (duplicate of pages 2-3 of Chris Grengs-Memos-etc |
| Maureen Olhausen | 13-15 (legal analysis) |

The first two directory entries concern a recommendation to the Commission whether to publicly release an FTC report cited by the Court in its *Granholm* decision.  In conjunction with the recommendation, staff attorneys conducted a legal analysis of the Court's decision.  These documents identify what the attorneys believed were the underpinnings of the Court's decision.  The recommendation itself contains the same ideas.  *Id*. at ¶ 15.

The third directory entry, pages 13-15 of Maureen Olhausen, is a memorandum of a staff attorney to a senior official providing legal analysis of various courts' holdings.  The memorandum discusses how these cases may effect the constitutionality of some state's restrictions on the wine trade.  The purpose of the memorandum was to inform the senior officials to enable them to recommend official Commission action. *Id*.

Disclosure of the facts culled by FTC staff from the legal opinions that were analyzed would reveal the author's views and ultimate recommendations.  The factual information contained within these documents is "inextricably intertwined with exempt portions" such that disclosure of the factual information would expose or cause harm to the agency's deliberations and would be tantamount to revealing the agency's deliberations.  In addition segregation of any factual information to the extent it could be considered as not being inextricably intertwined would result in release of disjointed words, phrases, or sentences with minimal or no information

10

content or have no meaning.  *Id*. at ¶ 16.

B. <u>Materials Relating to an Official Speech</u>.  The following items all relate to the

preparation and drafting of a speech by a senior agency official (*see id*. at ¶ 17):

| Directory | Pages |
|---|---|
| Maureen Olhausen | 1-7, 16-17, 24-26 |

Pages 1-7 are the handwritten notes of a subordinate staff attorney to the senior official

for use in preparing the speech.  These notes identify potential conflicting policies of state liquor

control boards and state policy objectives.  The notes describe specific factors that the staff

attorney believes may influence pending legislative changes and the affect of such changes on

industry participants.  The notes also identify the potential effects on the consumer of allowing

interstate shipments of alcohol and include the variety of products that would be available to the

consumer, the prices paid, and the convenience of purchase.  Pages 16-17 are a draft outline of

the speech that the senior official intended to present.  This draft was intended as a personal aid

in presenting the speech and included comments debating the content of the final speech.  The

outline incorporates various facts from the subordinate attorney's notes.  Pages 24-26 contain

possible discussion points for the speech including the implications of establishing a "do not

email" registry, and self-regulation of alcohol advertising standards by industry participants.  *Id*.

at ¶ 18.

The factual information contained within these documents is "inextricably intertwined

with exempt portions" such that disclosure of the factual information will necessarily reveal the

iterative process by which the speech was prepared and the key thoughts that guided the

speaker's ultimate presentation.  For the same reasons that draft letters should not be released, as

discussed in section III, *supra*, these documents leading up to the final speech should not be

released because their disclosure would allow the public to reconstruct the predecisional judgments of the speaker and reveal his or her mental processes.  Such a revelation would be tantamount to revealing the agency's deliberations.  In addition, segregation of any factual information to the extent it could be considered as not being inextricably intertwined would result in release of disjointed words, phrases, or sentences with minimal or no information content or have no meaning.  *Id*. at ¶ 19.

C.  Internal E-Mail Regarding Proposed Legislation.  The following document is an internal agency e-mail from one FTC staff member to another identifying pending state legislation concerning direct shipments of alcohol (*see id*. at ¶ 20):

| Directory | Pages |
|---|---|
| Internet Wine Correspondence | 234 |

The e-mail provides the author's analysis of the sponsor's rationale for parts of the legislation and expressed his views on the arguments of the opponents of the legislation.  The e-mail was intended to assist the recipient in formulating a recommendation to the Commission to take official action with respect to legislation pending in other states.  *Id*. at ¶ 21.

The factual information contained within these documents is "inextricably intertwined" with the author's analysis such that disclosure of the factual information would be tantamount to revealing the agency's deliberations by exposing the factual predicates for the staff member's analysis.  In addition segregation of any factual information to the extent it could be considered as not being inextricably intertwined would result in release of disjointed words, phrases, or sentences with minimal or no information content or have no meaning.  *Id*. at ¶ 22.

D.  Internal E-Mail Identifying Potential Resources.  The following document is an internal e-mail to a senior agency official (*see id*. at ¶ 23):

| Directory | Pages |
|-----------|-------|
| Maureen Olhausen | 60 |

This internal agency e-mail from one FTC staff member to a senior FTC official identifies individuals serving on various state liquor control boards.  The purpose of the e-mail is to identify individuals whom the senor official may potentially contact to obtain information about direct shipment legislation for the purpose of formulating policy recommendations to the Commission.  The e-mail also identifies industry meetings which FTC staff was considering attending.  *Id*. at ¶ 24.

Release of this information has the potential to reveal the processes by which the senior official formulated his or her policy recommendations to the Commission or cause confusion as to the inputs actually received.  The factual information contained within these documents is "inextricably intertwined with exempt portions" such that disclosure of the factual information would be tantamount to revealing the agency's deliberations.  In addition segregation of any factual information to the extent it could be considered as not being inextricably intertwined would result in release of disjointed words, phrases, or sentences with minimal or no information content or have no meaning.  *Id*. at ¶ 25.

E.  <u>Documents Relating to Congressional Matters</u>.  The following materials relate to congressional matters (*see id*. at ¶ 26):

| Directory | Pages |
|-----------|-------|
| Congress Testimony and related Memos | 2-3, 18-19 (duplicates pp 2-3). |
| Congress Testimony and related Memos | 93-96 |

The first directory entry, pages 2-3, is the recommendation of an FTC staff member to the Commission concerning submission of prepared testimony to a congressional subcommittee. The recommendation broadly identifies the factual content of testimony proposed to be

13

submitted to Congress.  The recommendation also suggests which staff attorney may appear

before the Congressional committee.  *Id*. at ¶ 27.

The second directory entry, pages 93-96, consists of questions posed by a member of a

congressional committee to an FTC staff member after his congressional testimony relating to

internet wine sales and draft answers.   The draft attempts to reconcile the FTC's warning as to

Internet gambling and its position on internet sale of wine.  The draft identifies the differences in

how transactions are completed, and the roles of the various providers.[4]  *Id*.

The factual information contained within these documents is "inextricably intertwined

with exempt portions" such that disclosure of the factual information would reveal the agency's

deliberations.  For the same reasons that draft letters should not be released, as discussed in

section III, *supra*, these draft answers should not be released as it would allow the public to

reconstruct the predecisional judgments and recommendations of FTC staff by comparing them

to the Commission's official response.  In addition segregation of any factual information to the

extent it could be considered as not being inextricably intertwined would result in release of

disjointed words, phrases, or sentences with minimal or no information content or have no

meaning.  *Id*. at ¶ 28.

F.  <u>Handwritten Notes</u>.  The following materials are all predecisional handwritten notes

prepared by agency officials (*see id*. at ¶ 29):

| Directory | Pages |
|---|---|
| Maureen Olhausen | 120-121, 123-125, 145-148, 182-184 |
| James Cooper-handwritten notes | 1-5 |
| Maureen Olhausen | 113 |

---

[4] While the draft answers are protected from disclosure under Exemption 5, the FTC upon further consideration determined that release of the actual questions posed by the congressman to the FTC will not unduly expose the FTC's deliberative processes.  The redacted document has been provided to Plaintiff.  Def. Exh. D, Fina Sec. Suppl. Dec. n. 4.

14

| Wine Amicus Memo | 279-283 |
| Wine Amicus Memo | 295-302 |

These documents contain the handwritten notes of various FTC officials. The pages identified in the first two directories are the handwritten notes of FTC officials that were taken while attending wine industry meetings, the purpose of which was to gather factual information to use in formulating policy recommendations to the Commission. These notes identify the various segments of the alcoholic beverage industry, the specific factors that affect direct shipment of product, and the various factors that drive industry litigation and state legislation. *Id*. at ¶ 30.

The third directory entry, page 113 of Maureen Olhausen, was taken by an FTC official during a meeting. The notes identify the author's impression of industry beliefs as to affects of pending direct shipment litigation. The notes reveal possible actions to be taken by FTC staff and include what meetings they may attend. *Id*.

The fourth directory entry, pages 279-283 of Wine Amicus Memo, was taken by a staff attorney regarding his view of pending direct shipment legislation in a particular state. The specific factual content includes the attorney's view of the affect of the legislation on certain types of products, and the affect on all levels of distribution. It also identifies the agency personnel within the various bureaus who were expected to produce materials for review by senior individuals. *Id*. at ¶ 31.

The fifth directory entry, pages 285-302 of Wine Amicus Memo, was taken by an FTC official during an external meeting. The notes describe the author's understanding of state alcohol distribution systems, and possible changes to those systems resulting from the *Granholm* decision. These notes also reflect the author's understanding of the affect on the alcohol distribution system of the then pending legislation in Florida on direct shipments of alcohol. *Id*.

15

The authors of these notes were selecting certain facts from the presentation of a larger group of facts. The process of note taking involves a selection process by which the note taker evaluates what he or she regards as significant and important enough to note and that which is not germane to the note taker's interest. *Id*. at ¶ 32. Therefore, the facts contained in these documents fall into the first circumstance described in Section I, *supra*. *See Montrose Chemical Corp. of California v. Train*, 491 F.2d 63, 68 (D.C. Cir. 1974)  ("Even if they cited portions of the evidence verbatim, the assistants were making an evaluation of the relative significance of the facts; "observing the selection of facts reveals "the decision-making process itself"). Also, akin to draft documents, comparison of the "rough" notes with the agency's final policy statements would disclose the agency's deliberative process.  The FTC properly invoked Exemption 5 to withhold these documents in their entirety.

The factual information contained within these documents is inherently "inextricably intertwined with exempt portions," such that disclosure of the factual information would expose or cause harm to the agency's deliberations and would reveal the agency's deliberations.  In addition segregation of any factual information to the extent it could be considered as not being inextricably intertwined would result in release of disjointed words, phrases, or sentences with minimal or no information content or have no meaning. *Id*. at ¶ 32.

## V.     CONCLUSION

Based on the above, as well as Ms. Fina's declarations, it is clear that the Commission considered and has explained why no factual portions of those documents withheld in full under Exemption 5 could be segregated. Therefore, the Commission has fully complied with its obligation under the FOIA to consider segregability. This Court should grant the Commission's Renewed Motion for Summary Judgment.

16

Respectfully Submitted,


/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


/s/ Rudolph Contreras /dvh
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/ Beverly M. Russell
_____
Of Counsel:                                      BEVERLY M. RUSSELL, D.C. Bar #454257
WILLIAM BLUMENTAHL                  Assistant United States Attorney
General Counsel                              U.S. Attorney's Office for the District
                                                        of Columbia, Civil Division
JOHN F. DALY                               555 4th Street, N.W., Rm. E-4915
Deputy General Counsel for Litigation   Washington, D.C. 20530
                                                       Ph:  (202) 307-0492
DAVID C. SHONKA                        Fax: (202) 514-8780
Assistant General Counsel for Litigation   E-Mail: beverly.russell@usdoj.gov

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing ***Defendant's Renewed Motion for Summary Judgment*** was served

upon Plaintiff by the Court's Electronic Case Filing System, to:

John E. Drury
Law Offices of John E. Drury, PC
1900 L Street, N.W., Suite 303
Washington, D.C.  20036
jedrury@aol.com

on this <u>5th</u> day of December, 2007.


/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARTER, FULLERTON & HAYES, LLC,  )
                                 )
                    Plaintiff,   )
                                 )
            v.                   )        Civil Action No. 07-01041(RCL)
                                 )
FEDERAL TRADE COMMISSION,        )
                                 )
                    Defendant.   )
_____  )

**DEFENDANT FEDERAL TRADE COMMISSION'S
STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Rule 7(h) of the Rules of this Court, and in support of its Renewed

Motion for Summary Judgment, Defendant Federal Trade Commission ("FTC" or

"Commission") hereby submits the following list of material facts that are not in dispute[1]:

1.      Of the fifteen directories containing documents that were withheld in their

entirety under Exemption 5, five of the directories contain documents withheld under the work

product aspect of Exemption 5.  Def. Exh. D, Fina Sec. Suppl. Dec. ¶ 2.  They are as follows[2,3]:

---

[1] Defendant incorporates by reference its Statement of Material Facts Not in Dispute filed in support of its initial motion for summary judgment.  See R. 5.

[2] The *Vaughn* Index did not specifically identify the Wine Amicus Memo, pages 1-12, as work product.  However, the document provides legal analysis of court decisions, their application to the constitutionality of state regulation, discusses whether the Commission should file *amicus* briefs in then pending litigation, and discusses the possible contents of the brief.  The document is entitled to protection as work product.    Def. Exh. D, Fina Sec. Suppl. Dec. n. 2.

[3] The *Vaughn* Index did not specifically identify the Internal Wine Correspondence as work product.  However, each of these documents provides legal analysis of court decisions, their application to the constitutionality of state regulation, and discusses whether the Commission should file *amicus* briefs in then pending litigation and are entitled to protection as work product. Def. Exh. D, Fina Sec. Suppl. Dec. n. 3.

| Directory | | Pages |
|---|---|---|
| Wine Amicus Memo | | 1-12, 113-130, 131-170 |
| Internet Wine Memos etc | | 1-21 |
| Advocacy Preliminary Research | | 1-40 (Entire directory) |
| Internal Memo | | 2-71 (Entire directory except for page 1, which was released) |
| Internet Wine Correspondence | | 147, 148-163, 218-233 (another version of pages 148-163), 235-236 |

2.      The FTC has a long-standing interest in state alcohol distribution laws and their effects on competition.  To this end, FTC staff made numerous recommendations to the Commission.  These staff recommendations concerned official letters to various legislators who were considering amendments to their state alcohol distribution laws in light of *Granholm v. Heald,* 544 U.S. 460, 472 (2005).   Staff made specific recommendations to the Commission as to sending advocacy letters to legislators in Florida, and Ohio.  Included with these recommendations, were drafts of letters that the staff proposed to be sent.  Def. Exh. D, Fina Sec. Suppl. Dec. at ¶ 4.

3.      In conjunction with a letter to a Florida legislator, the FTC authorized a press release.  In making this release, a senior FTC official edited drafts of the press release that were prepared by a staff attorney.  Again, in concert with the FTC's overall position on direct shipments, staff recommended publication of an internal report on anticompetitive barriers to e-commerce affecting online wine sales.  *Id*. at ¶ 5.

4.      The below table identifies the location on the *Vaughn* index of the recommendations to send letters to state legislators and the associated drafts.  The draft press release and the recommendation with respect to the e-commerce report, are parenthetically identified.  *Id*. at ¶ 6.

| Directory | Pages |
|---|---|
| Janet Evans Memos, Drafts, Other | 3-15 |
| Internal Drafts, Corr. regarding drafts | 1-125, 128-153, 155-218, 226-442, 448-483, 498-522, 526-656 |
| Florida Direct Shipping Letter | 1-25* |
| Ohip Direct Shipping Corresp. | 1-10*, 35-43 (duplicates pp. 2-10)* |
| California Beer Franchise Memo and Corre. | 1-14*, 22-31*, 32-42, 65-78*, 90-97 |
| Internet Wine Correspondence | 238-246, 260-267, 270-278*, 288, 295-303*, 308-316*, 321-330*, 335-343* |
| Wine Amicus Memo | 171-188*, 205-221*, 229-233*, 235-246*, 258-278* |
| Internal Drafts, Corr. regarding drafts | 126-127, 154, 219-225, 443-447, 484, 523-525 |
| Internal Drafts, Corr. regarding drafts | 485-497 (draft press release) |
| Wine Report and Memos | 3-14, 69-74 (duplicates pages 3-8, recommendation as to release of an internal report) |

* Draft letter that includes a staff recommendation to the Commission with respect to release.

4.     The factual material contained within these recommendations, draft letters, draft press release, and recommendation concerning release of the e-commerce report are of a similar nature. The factual information describes the impact on consumers of allowing direct wine shipments to customers from out-of-state sources. The factual information specifically addresses the impact on:  the variety of product that would be available to customers; prices paid by customers; and the convenience of purchase. The factual information also describes the impact on state policy objectives, and specifically identifies the impact on the collection of taxes and on underage consumption of alcoholic beverages. *Id*. at ¶ 7.

5.      The FTC, in addition to work-product, draft documents, and recommendations, also withheld a number of miscellaneous documents in their entirety.  Def. Exh. D, Fina Sec. Suppl. Dec. ¶ 13.  These include legal memoranda, staff attorney notes taken during various meetings, notes prepared to aid in the delivery of a Commission sanctioned speech, as well as other miscellaneous documents.  *Id.*

a. <u>Legal Memoranda</u>.  The following documents, which were withheld in their entirety, contain legal analysis (*see id*. at ¶ 14):

| Directory | Pages |
|---|---|
| Chris Grengs-Memos-etc | 1-3 (legal analysis of *Granholm* decision and recommendation as to release a report cited by the Court) |
| Internet Wine Memos etc | 22-23 (duplicate of pages 2-3 of Chris Grengs-Memos-etc |
| Maureen Olhausen | 13-15 (legal analysis) |

The first two directory entries concern a recommendation to the Commission whether to publicly release an FTC report cited by the Court in its *Granholm* decision.  In conjunction with the recommendation, staff attorneys conducted a legal analysis of the Court's decision.  These documents identify what the attorneys believed were the underpinnings of the Court's decision. The recommendation itself contains the same ideas.  *Id*. at ¶ 15.

The third directory entry, pages 13-15 of Maureen Olhausen, is a memorandum of a staff attorney to a senior official providing legal analysis of various courts holdings.  The memorandum discusses how these cases may effect the constitutionality of some state's restrictions on the wine trade.  The purpose of the memorandum was to inform the senior officials to enable them to recommend official Commission action. *Id*.

b.  <u>Materials Relating to an Official Speech</u>.  The following items all relate to the preparation and drafting of a speech by a senior agency official (*see id*. at ¶ 17):

| Directory | Pages |
|---|---|
| Maureen Olhausen | 1-7, 16-17, 24-26 |

Pages 1-7 are the handwritten notes of a subordinate staff attorney to the senior official for use in preparing the speech. These notes identify potential conflicting policies of state liquor control boards and state policy objectives. The notes describe specific factors that the staff attorney believes may influence pending legislative changes and the affect of such changes on industry participants. The notes also identify the potential effects on the consumer of allowing interstate shipments of alcohol and include the variety of products that would be available to the consumer, the prices paid, and the convenience of purchase. Pages 16-17 are a draft outline of the speech that the senior official intended to present. This draft was intended as a personal aid in presenting the speech and included comments debating the content of the final speech. The outline incorporates various facts from the subordinate attorney's notes. Pages 24-26 contain possible discussion points for the speech including the implications of establishing a "do not email" registry, and self-regulation of alcohol advertising standards by industry participants. *Id*. at ¶ 18.

c. Internal E-Mail Regarding Proposed Legislation. The following document is an internal agency e-mail from one FTC staff member to another identifying pending state legislation concerning direct shipments of alcohol (*see id*. at ¶ 20):

| Directory | Pages |
|---|---|
| Internet Wine Correspondence | 234 |

The e-mail provides the author's analysis of the sponsor's rationale for parts of the legislation and expressed his views on the arguments of the opponents of the legislation. The e-mail was intended to assist the recipient in formulating a recommendation to the Commission to

take official action with respect to legislation pending in other states.  *Id*. at ¶ 21.

        d.  <u>Internal E-Mail Identifying Potential Resources</u>.  The following document is

an internal e-mail to a senior agency official (*see id*. at ¶ 23):

| Directory | Pages |
|-----------|-------|
| Maureen Olhausen | 60 |

        This internal agency e-mail from one FTC staff member to a senior FTC official

identifies individuals serving on various state liquor control boards.  The purpose of the e-mail is

to identify individuals whom the senor official may potentially contact to obtain information

about direct shipment legislation for the purpose of formulating policy recommendations to the

Commission.  The e-mail also identifies industry meetings which FTC staff was considering

attending.  *Id*. at ¶ 24.

        e.  <u>Documents Relating to Congressional Matters</u>.  The following materials relate

to congressional matters (*see id*. at ¶ 26):

| Directory | Pages |
|-----------|-------|
| Congress Testimony and related Memos | 2-3, 18-19 (duplicates pp 2-3). |
| Congress Testimony and related Memos | 93-96 |

        The first directory entry, pages 2-3, is the recommendation of an FTC staff member to

the Commission concerning submission of prepared testimony to a congressional subcommittee.

The recommendation broadly identifies the factual content of testimony proposed to be

submitted to Congress.  The recommendation also suggests which staff attorney may appear

before the Congressional committee.  *Id*. at ¶ 27.

        The second directory entry, pages 93-96, consists of questions posed by a member of a

congressional committee to an FTC staff member after his congressional testimony relating to

internet wine sales and draft answers.   The draft attempts to reconcile the FTC's warning as to

Internet gambling and its position on internet sale of wine. The draft identifies the differences in how transactions are completed, and the roles of the various providers. *Id.*

  f. <u>Handwritten Notes</u>. The following materials are all predecisional handwritten notes prepared by agency officials (*see id*. at ¶ 29):

| Directory | Pages |
|---|---|
| Maureen Olhausen | 120-121, 123-125, 145-148, 182-184 |
| James Cooper-handwritten notes | 1-5 |
| Maureen Olhausen | 113 |
| Wine Amicus Memo | 279-283 |
| Wine Amicus Memo | 295-302 |

  These documents contain the handwritten notes of various FTC officials. The pages identified in the first two directories are the handwritten notes of FTC officials that were taken while attending wine industry meetings, the purpose of which was to gather factual information to use in formulating policy recommendations to the Commission. These notes identify the various segments of the alcoholic beverage industry, the specific factors that affect direct shipment of product, and the various factors that drive industry litigation and state legislation. *Id*. at ¶ 30.

  The third directory entry, page 113 of Maureen Olhausen, was taken by an FTC official during a meeting. The notes identify the author's impression of industry beliefs as to affects of pending direct shipment litigation. The notes reveal possible actions to be taken by FTC staff and include what meetings they may attend. *Id*.

  The fourth directory entry, pages 279-283 of Wine Amicus Memo, was taken by a staff attorney regarding his view of pending direct shipment legislation in a particular state. The specific factual content includes the attorney's view of the affect of the legislation on certain types of products, and the affect on all levels of distribution. It also identifies the agency

personnel within the various bureaus who were expected to produce materials for review by senior individuals. *Id*. at ¶ 31.

The fifth directory entry, pages 285-302 of Wine Amicus Memo, was taken by an FTC official during an external meeting. The notes describe the author's understanding of state alcohol distribution systems, and possible changes to those systems resulting from the *Granholm* decision. These notes also reflect the author's understanding of the affect on the alcohol distribution system of the then pending legislation in Florida on direct shipments of alcohol. *Id*.

Respectfully Submitted,


/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


/s/ Rudolph Contreras /dvh
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/ Beverly M. Russell
_____

| | |
|---|---|
| Of Counsel: | BEVERLY M. RUSSELL, D.C. Bar #454257 |
| WILLIAM BLUMENTAHL | Assistant United States Attorney |
| General Counsel | U.S. Attorney's Office for the District |
| | of Columbia, Civil Division |
| JOHN F. DALY | 555 4th Street, N.W., Rm. E-4915 |
| Deputy General Counsel for Litigation | Washington, D.C. 20530 |
| | Ph: (202) 307-0492 |
| DAVID C. SHONKA | Fax: (202) 514-8780 |
| Assistant General Counsel for Litigation | E-Mail: beverly.russell@usdoj.gov |

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARTER, FULLERTON, & HAYES, LLC  )
                                 )
          Plaintiff,             )
                                 )
     v.                          )          Civ. Action No. 1:07CV01041 (RCL)
                                 )
FEDERAL TRADE COMMISSION         )
                                 )
          Defendant              )
_____)

SECOND SUPPLEMENTAL DECLARATION OF MS. JOAN FINA

I, Joan Fina, declare the following to be a true and correct statement of facts based on my review of the official files and records of the Commission, my personal knowledge, or on the basis of information acquired by me through the performance of my official duties:

1.     The FTC loaded all identified documents that were potentially responsive to Plaintiff's FOIA request into a FOIAXpress database containing 23 distinct directories.  Fifteen of the 23 directories of the FOIAXpress database contain documents that were withheld in their entirety under Exemption 5.  The remaining eight directories do not contain documents that are subject to the Court's order.[1]

Defense Exhibit D

---

[1] Six of the 23 directories were released in their entirety:  "Chris Grengs-Public;" "Reports;" "Greg Luib-Believed Public;" "Inter-Agency Corr;" "Janet Evans E-mails;" and "New Hampshire Power Points."  The "Consumer Complaints" directory only invoked Exemption (b)(6).  The "Draft Advocacy Comments" directory contains only duplicates of documents that were otherwise withheld under Exemption 5 and are located in other directories.  As such, the documents contained in this directory were not withheld under Exemption 5 and are not separately analyzed.

2.    Of the fifteen directories containing documents that were withheld in their entirety under

Exemption 5, five of the directories contain documents properly withheld under the work product

aspect of Exemption 5 and are as follows:

| Directory | Pages |
|---|---|
| Wine Amicus Memo | 1-12[2], 113-130, 131-170 |
| Internet Wine Memos etc | 1-21 |
| Advocacy Preliminary Research | 1-40 (Entire directory) |
| Internal Memo | 2-71 (Entire directory except for page 1, which was released) |
| Internet Wine Correspondence[3] | 147, 148-163, 218-233 (another version of pages 148-163), 235-236 |

3.    In *Granholm v. Heald,* 544 U.S. 460, 472 (2005), the Court struck down state law that

discriminated against direct shipment of alcohol by out-of-state producers in favor of in-state

producers.  The Court held that state law violates the Dormant Commerce Clause if it mandates

"different treatment of in-state and out-of-state economic interests that benefit the former and

burden the latter."  This decision affected a number of states' regulatory schemes pertaining to

interstate shipments of alcohol and required those states to amend their laws to conform to

*Granholm.*

---

[2] The *Vaughn* Index did not specifically identify this document as work product.  However, the document provides legal analysis of court decisions, their application to the constitutionality of state regulation, discusses whether the Commission should file *amicus* briefs in then pending litigation, and discusses the possible contents of the brief.  The document is entitled to protection as work product.

[3] The *Vaughn* Index did not specifically identify these documents as work product.  However, each of these documents provides legal analysis of court decisions, their application to the constitutionality of state regulation, and discusses whether the Commission should file *amicus* briefs in then pending litigation and are entitled to protection as work product.

4.    The *Granholm* decision presented a significant opportunity for the Commission to advocate its position with respect to these distribution schemes. The FTC has a long-standing interest in state alcohol distribution laws and their effects on competition. To this end, FTC staff made numerous recommendations to the Commission. These staff recommendations concerned official letters to various legislators who were considering amendments to their state alcohol distribution laws in light of *Granholm*. Staff made specific recommendations to the Commission as to sending advocacy letters to legislators in Florida, and Ohio. Included with these recommendations, were drafts of letters that the staff proposed to be sent.

5.    In conjunction with a letter to a Florida legislator, the FTC authorized a press release. In making this release, a senior FTC official edited drafts of the press release that were prepared by a staff attorney. Again, in concert with the FTC's overall position on direct shipments, staff recommended publication of an internal report on anticompetitive barriers to e-commerce affecting online wine sales.

6.    The below table identifies the location on the *Vaughn* index of the recommendations to send letters to state legislators and the associated drafts. The draft press release and the recommendation with respect to the e-commerce report, are parenthetically identified.

| Directory | Pages |
| --- | --- |
| Janet Evans Memos, Drafts, Other | 3-15 |
| Internal Drafts, Corr. regarding drafts | 1-125, 128-153, 155-218, 226-442, 448-483, 498-522, 526-656 |
| Florida Direct Shipping Letter | 1-25* |
| Ohio Direct Shipping Corresp. | 1-10*, 35-43 (duplicates pp. 2-10)* |
| California Beer Franchise Memo and Corre. | 1-14*, 22-31*, 32-42, 65-78*, 90-97 |
| Internet Wine Correspondence | 238-246, 260-267, 270-278*, 288, 295-303*, 308-316*, 321-330*, 335-343* |

3

| Wine Amicus Memo | 171-188*, 205-221*, 229-233*, 235-246*, 258-278* |
| Internal Drafts, Corr. regarding drafts | 126-127, 154, 219-225, 443-447, 484, 523-525 |
| Internal Drafts, Corr. regarding drafts | 485-497 (draft press release) |
| Wine Report and Memos | 3-14, 69-74 (duplicates pages 3-8, recommendation as to release of an internal report) |

\* Draft letter that includes a staff recommendation to the Commission with respect to release.

7.     The factual material contained within these recommendations, draft letters, draft press release, and recommendation concerning release of the e-commerce report are of a similar nature. The factual information describes the impact on consumers of allowing direct wine shipments to customers from out-of-state sources. The factual information specifically addresses the impact on: the variety of product that would be available to customers; prices paid by customers; and the convenience of purchase. The factual information also describes the impact on state policy objectives, and specifically identifies the impact on the collection of taxes and on underage consumption of alcoholic beverages.

8.     The factual information contained in the draft documents and the recommendations is inextricably intertwined with the deliberative process. Revealing the factual data relied upon by the Commission's staff would enable the reader to deconstruct the staff's thought processes and deliberations, and reveal the ultimate recommendation and expose the analysis of the staff prior to the Commission making a decision.

9.     The draft nature of the majority of the documents in this category provides an additional reason for withholding them. By comparing factual materials within drafts to final versions available to the public, one can reconstruct the decisionmaking process by comparing factual

4

material in the two versions that was kept, moved, or edited. Quite simply, withholding drafts of documents in their entirety is essential to the protection of the deliberative process.

10.    As an example, some of the draft legislator letters are different versions of the letter that was ultimately sent to the legislators. An advocacy letter was sent to the Honorable Paula Dockery of Florida. As identified in the FTC's *Vaughn* Index, the final letter was released to the Plaintiff. *See* Florida Direct Shipping Letter, pp 27-38. Drafts of this letter are contained at:

| Directory | Pages |
|---|---|
| Janet Evans Memos, Drafts, Other | 3-15 |
| Wine Amicus Memo | 177-188 |
| Internal Drafts, Corr. regarding drafts | 498-510, 511-522, 526-538, 539-551, 552-564, 565-576, 577-591, 592-603, 604-619, 620-631, 632-644, 645-656 |
| Florida Direct Shipping Letter | 2-13, 14-25 |

An advocacy letter was sent to the Honorable Wesley Chesbro of California. As identified in the FTC's *Vaughn* Index, the final letter was released to the Plaintiff. See California Beer Franchise Memo and Corre., pp 47-55. Drafts of this letter are contained at:

| Directory | Pages |
|---|---|
| California Beer Franchise Memo and Corre. | 7-14, 23-31, 32-42, 71-78, 90-97 |

An advocacy letter was sent to the Honorable Eric Fingerhut of Ohio. As identified in the FTC's *Vaughn* Index, the final letter was released to the Plaintiff. *See* Ohio Direct Shipping Corresp., pp. 14-24. Drafts of this letter are contained at:

| Directory | Pages |
|---|---|
| Wine Amicus Memo | 211-221 |
| Internal Drafts, Corr. regarding drafts | 297-307, 308-319, 320-330, 331-343, 345-356, 357-367, 368-380, 381-392, 393-404, 405-416, 417- 428, 429-442, 448-459, 460-471, 472-483 |

11.    Similarly, the draft press releases contain extensive edits that include handwritten notes and extensive strikeouts of text reflecting the thought process of a senior FTC official in deciding what information should be publicly released.  The edits were incorporated in the publicly released version of the document.  *See* http://www.ftc.gov/opa/2006/04/floridawine.shtm.

12.    The very process by which a draft evolves into a final document is itself a deliberative process and warrants protection.

13.    The FTC, in addition to work-product, draft documents, and recommendations, also withheld a number of miscellaneous documents in their entirety.  These include legal memoranda, staff attorney notes taken during various meetings, notes prepared to aid in the delivery of a Commission sanctioned speech, as well as other miscellaneous documents.

14.    The following documents contained legal analysis that were withheld in their entirety:

| Directory | Pages |
|---|---|
| Chris Grengs-Memos-etc | 1-3 (legal analysis of *Granholm* decision and recommendation as to release a report cited by the Court) |
| Internet Wine Memos etc | 22-23 (duplicate of pages 2-3 of Chris Grengs-Memos-etc |
| Maureen Olhausen | 13-15 (legal analysis) |

15.    The first two directory entries concern a recommendation to the Commission whether to publicly release an FTC report cited by the Court in its *Granholm* decision.  In conjunction with the recommendation, staff attorneys conducted a legal analysis of the Court's decision.  These

6

documents identify what the attorneys believed were the underpinnings of the Court's decision.

The recommendation itself contains the same ideas. The third directory entry, pages 13-15 of

Maureen Olhausen, is a memorandum of a staff attorney to a senior official providing legal

analysis of various courts holdings. The memorandum discusses how these cases may affect the

constitutionality of some state's restrictions on the wine trade. The purpose of the memorandum

was to inform the senior officials to enable them to recommend official action to the

Commission.

16.    Disclosure of the facts culled by FTC staff from the legal opinions that were analyzed

would reveal the author's views and ultimate recommendations. The factual information

contained within these documents is "inextricably intertwined with exempt portions" such that

disclosure of the factual information would expose or cause harm to the agency's deliberations

and would be tantamount to revealing the agency's deliberations. In addition segregation of any

factual information to the extent it could be considered as not being inextricably intertwined

would result in release of disjointed words, phrases, or sentences with minimal or no information

content or have no meaning.

17.    The following items all relate to the preparation and drafting of a speech by a senior

agency official:

| Directory | Pages |
|---|---|
| Maureen Olhausen | 1-7, 16-17, 24-26 |

18.    Pages 1-7 are the handwritten notes of a subordinate staff attorney to the senior official

for use in preparing the speech. These notes identify potential conflicting policies of state liquor

control boards and state policy objectives. The notes describe specific factors that the staff

attorney believes may influence pending legislative changes and the affect of such changes on industry participants. The notes also identify the potential effects on the consumer of allowing interstate shipments of alcohol and include the variety of products that would be available to the consumer, the prices paid, and the convenience of purchase. Pages 16-17 are a draft outline of the speech that the senior official intended to present. This draft was intended as a personal aid in presenting the speech and included comments debating the content of the final speech. The outline incorporates various facts from the subordinate attorney's notes. Pages 24-26 contain possible discussion points for the speech to include the implications in establishing a "do not email" registry, and self-regulation of alcohol advertising standards by industry participants.

19.    The factual information contained within these documents is "inextricably intertwined with exempt portions" such that disclosure of the factual information will necessarily reveal the iterative process by which the speech was prepared and the key thoughts that guided the speaker's ultimate presentation. For the same reasons that draft letters should not be released, as discussed *supra*, these predecessor documents to the final speech should not be released as it would allow the public to reconstruct the predecisional judgments of the speech giver and reveal his or her mental processes. Such a revelation would expose or cause harm to the agency's deliberations and would be tantamount to revealing them. In addition segregation of any factual information to the extent it could be considered as not being inextricably intertwined would result in release of disjointed words, phrases, or sentences with minimal or no information content or have no meaning.

20. The following document is an internal agency e-mail from one FTC staff member to another identifying pending state legislation concerning direct shipments of alcohol:

8

| Directory | Pages |
|---|---|
| Internet Wine Correspondence | 234 |

21.     The e-mail provides the author's analysis of the sponsor's rationale for parts of the legislation and expressed his views on the arguments of the opponents of the legislation. The e-mail was intended to assist the recipient in formulating a recommendation to the Commission to take official action with respect to legislation pending in other states.

22. The factual information contained within these documents is "inextricably intertwined" with the author's analysis such that disclosure of the factual information would reveal the agency's deliberations by exposing the factual predicates for the staff member's analysis. In addition segregation of any factual information to the extent it could be considered as not being inextricably intertwined would result in release of disjointed words, phrases, or sentences with minimal or no information content or have no meaning.

23. The following document is an internal e-mail to a senior agency official:

| Directory | Pages |
|---|---|
| Maureen Olhausen | 60 |

24.     This internal agency e-mail from one FTC staff member to a senior FTC official identifies individuals serving on various state liquor control boards. The purpose of the e-mail is to identify individuals whom the senor official may potentially contact to obtain information about direct shipment legislation for the purpose of formulating policy recommendations to the Commission. The e-mail also identifies industry meetings which FTC staff was considering attending.

25.     Release of this information has the potential to reveal the processes by which the senior

official formulated his or her policy recommendations to the Commission or cause confusion as

to the inputs actually received.  The factual information contained within these documents is

"inextricably intertwined with exempt portions" such that disclosure of the factual information

would be tantamount to revealing the agency's deliberations.  In addition segregation of any

factual information to the extent it could be considered as not being inextricably intertwined

would result in release of disjointed words, phrases, or sentences with minimal or no information

content or have no meaning.

26.     The following materials relate to congressional matters:

| **Directory** | **Pages** |
| --- | --- |
| Congress Testimony and related Memos | 2-3, 18-19 (duplicates pp 2-3). |
| Congress Testimony and related Memos | 93-96 |

27.     The first directory entry, pages 2-3, is the recommendation of an FTC staff member to the

Commission concerning submission of prepared testimony to a congressional subcommittee.

The recommendation broadly identifies the factual content of testimony proposed to be submitted

to Congress.  The recommendation also suggests which staff attorney may appear before the

Congressional committee.  The second directory entry, pages 93-96, consists of questions posed

by a member of a congressional committee to an FTC staff member after his congressional

testimony relating to internet wine sales and draft answers.   The draft answer attempts to

reconcile the FTC's warning as to Internet gambling and its position on internet sale of wine.

The draft identifies the differences in how transactions are completed, and the roles of the

10

various providers.[4]

28.    The factual information contained within these documents is "inextricably intertwined

with exempt portions" such that disclosure of the factual information would expose or cause

harm to the agency's deliberations and would be tantamount to revealing the agency's

deliberations.  For the same reasons that draft letters should not be released, as discussed *supra*,

these draft answers should not be released as it would allow the public to reconstruct the

predecisional judgments and recommendations of FTC staff by comparing them to the

Commission's official response.  In addition segregation of any factual information to the extent

it could be considered as not being inextricably intertwined would result in release of disjointed

words, phrases, or sentences with minimal or no information content or have no meaning.

29.    The following materials are all predecisional handwritten notes prepared by agency

officials:

| Directory | Pages |
| --- | --- |
| Maureen Olhausen | 120-121, 123-125, 145-148, 182-184 |
| James Cooper-handwritten notes | 1-5 |
| Maureen Olhausen | 113 |
| Wine Amicus Memo | 279-283 |
| Wine Amicus Memo | 295-302 |

30.    These documents contain the handwritten notes of various FTC officials.  The pages

identified in the first two directories are the handwritten notes of FTC officials that were taken

while attending wine industry meetings, the purpose of which was to gather factual information

---

[4] While the draft answers are protected from disclosure under Exemption 5, the FTC upon further
consideration determined that release of the actual questions posed by the congressman to the
FTC will not unduly expose the FTC's deliberative processes.  The redacted document has been
provided to Plaintiff.

to use in formulating policy recommendations to the Commission. These notes identify the various segments of the alcoholic beverage industry, the specific factors that affect direct shipment of product, and the various factors that drive industry litigation and state legislation. The third directory entry, page 113 of Maureen Olhausen, was taken by an FTC official during a meeting. The notes identify the author's impression of industry beliefs as to affects of pending direct shipment litigation. The notes reveal possible actions to be taken by FTC staff to include what meetings they may attend.

31.    The fourth directory entry, pages 279-283 of Wine Amicus Memo, was taken by a staff attorney regarding his view of pending direct shipment legislation in a particular state. The specific factual content includes the attorney's view of the affect of the legislation on certain types of products, and the affect on all levels of distribution. It also identifies the agency personnel within the various bureaus who were expected to produce materials for review by senior individuals. The fifth directory entry, pages 285-302 of Wine Amicus Memo, was taken by an FTC official during an external meeting. The notes describe the author's understanding of state alcohol distribution systems, and possible changes to those systems resulting from the *Granholm* decision. These notes also reflect the author's understanding of the impact on the alcohol distribution system of the then pending legislation in Florida on direct shipments of alcohol.

32.    The authors of these notes were selecting certain facts from the presentation of a larger grouping of facts. The process of note taking involves a selection process by which the note taker evaluates what he or she regards as significant and important enough to take notes of and that which is not germane to the note taker's interest. Also, akin to draft documents, comparison

of the "rough" notes with the agency's final policy statements would disclose the agency's

deliberations and processes.   Therefore, the factual information contained within these

documents is inherently "inextricably intertwined with exempt portions" such that disclosure of

the factual information would expose or cause harm to the agency's deliberations and would

reveal the agency's deliberations.  In addition segregation of any factual information to the extent

it could be considered as not being inextricably intertwined would result in release of disjointed

words, phrases, or sentences with minimal or no information content or have no meaning.


I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct. Executed on December 3, 2007 in Washington, D.C.


Respectfully submitted,


_____

Ms. Joan Fina
Supervisory Attorney,
Federal Trade Commission

13

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAR  1 2001

NANCY MAYER WHITTINGTON, CLERK
U.S DISTRICT COURT

LARRY A. GIVNER, aka )
LARRY A. FELDMAN, aka )
LANCE FLEMING )
    Plaintiff, )
     )
   v. )
     )Civil Action No. 99-3454(RCL)
EXECUTIVE OFFICE FOR )
UNITED STATES ATTORNEYS )
     )
    Defendant. )
     )
_____)

MEMORANDUM OPINION

This matter comes before the court on defendants' Motion for
Summary Judgment, pursuant to Rule 56 of the Federal Rules of
Civil Procedure.  Plaintiff Larry Givner seeks release of
numerous documents by the defendant, Executive Office for United
States Attorneys (EOUSA), pursuant to the Freedom of Information
Act (FOIA), 5 U.S.C. § 552.  Givner has formally requested all
EOUSA documents that pertain to him.  The EOUSA has refused to
comply with the request in its entirety and has claimed
enumerated exemptions under FOIA.  Upon consideration of the
submissions of the parties, defendant's Motion for Summary
Judgment is hereby granted.

I. FACTUAL BACKGROUND

On February 9, 1997, Givner presented EOUSA with a FOIA



request for release of all documents and information pertaining to him.  In this request, Givner indicated that he believed these records were held by the United States Attorney's offices (USAOs) in Alabama, Florida, and Maryland. (Boseker Decl. ¶4.)  EOUSA established seven request files for the USAOs contained in Givner's request and notified Givner that his request had been received on February 14, 1997.  Between February 18, 1997 and March 17, 1997 the USAOs for the Northern District of Alabama, Middle District of Alabama, Middle District of Florida, Southern District of Florida, Northern District of Florida, and the District of Maryland informed Givner by letter that no records responsive to his request were located in any of those six districts. (Boseker Decl. ¶¶5-29.)  On February 27, 1997 the USAO for the Southern District of Alabama informed Givner that it had located documents responsive to his request, but would not release these documents pursuant to 5 U.S.C. § 552(b)(7)(A) and 5 U.S.C. § 552a(j)(2). (Boseker Decl. ¶¶6-10.)  On March 10, 1997, Givner appealed the EOUSA's determination to the Office of Information and Privacy (OIP).  OIP notified Givner on April 28, 1999 that it affirmed EOUSA's decision to withhold the documents under Exemption 7(A).

After being denied the documents withheld under Exemption 7(A), Givner sent EOUSA a second request on June 1, 1999 for all materials to which he was entitled.  EOUSA opened a new FOIA

2

request file, number 99-1725, and responded to Givner on October 20, 1999 with 1,387 pages of public source records.  EOUSA assessed a $128.70 duplication fee and reasserted Exemption 7(A) for the non-public material.  Givner, however, did not receive these records immediately as Federal Corrections Institute Morgantown, where he is serving his sentence, did not have authorization to receive the package and stamped it "Refused Return to Sender". (Boseker Decl. ¶13.)  Upon receipt of the returned materials, EOUSA notified Givner of the fee assessment and resent the materials on March 17, 2000 after he paid the fee. FCI Morgantown again refused to accept the papers and EOUSA again resent the documents on March 31, 2000. (Boseker Decl. ¶15.)

On December 28, 1999, during the period that the released documents were being sent and resent to FCI Morgantown, Givner filed suit to compel disclosure of the documents withheld by EOUSA pursuant to 5 U.S.C. §552(a)(4)(b).  As a result of this suit EOUSA ordered the USAO for the Southern District of Alabama to reevaluate Givner's claim and the application of Exemption 7(A).  EOUSA informed Givner on May 30, 2000 that this reevaluation produced 11 complete documents and 4 redacted documents that EOUSA previously withheld but then determined were segregable from the other materials. (Boseker Decl. ¶17.) EOUSA also informed Givner that it would continue to assert Exemption 7(A) in relation to the remaining materials he requested and also

claimed exclusion under 5 U.S.C. §§ 552(b)(3)(in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure), (b)(5), (b)(7)(c), (b)(7)(D), and 5 U.S.C. § 552a(j)(2).  Furthermore, Givner was notified that court sealed documents had not been released and 77 pages of material belonging to the Drug Enforcement Agency were being reviewed by that agency.

In response to Givner's suit, EOUSA filed the instant summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Accompanying EOUSA's motion was a Vaughn Index that consisted of a declaration by Mr. John Boseker, the Senior Attorney Advisor assigned to the case.

## II. ANALYSIS

### A. Introduction

The Freedom of Information Act, 5 U.S.C. § 552, as amended by the Freedom of Information Reform Act of 1986, §§ 1801-04 of Pub.L. No. 99-570, 100 Stat. 3207, 3207-48 (1986), establishes a statutory right for citizens to gain access to government information.  First enacted in 1966, the Act creates a basic presumption that agency records should be accessible to the public and commands government agencies to make records available upon demand unless the request falls within one of the nine exemptions.  As defendants justify non-disclosure by citing a number of exemptions, the Court will address the contested documents by exemption group rather than individually and assess

4

whether defendants have properly invoked each exemption.

In FOIA suits, the standard of review is de novo.  However, the defendant agency withholding requested information bears the burden of justifying its decision.  See, e.g., 5 U.S.C. § 552(a)(4)(B); Alyeska Pipeline Serv. Co. v. EPA, 856 F.2d 309, 311 (D.C.Cir. 1988)  As discussed below, the Court concludes that the EOUSA has met its burden to withhold this information from the plaintiff.

### B. Exemption 7(A)

EOUSA categorically asserts Exemption 7(A) to all of the withheld documents at issue, in addition to asserting numerous other exemptions to the specific categories of documents.  EOUSA argues that disclosure of these documents would assist Givner's two co-defendants, who remain at large, in avoiding possible arrest and conviction.  EOUSA also argues disclosure would detrimentally affect and would affect the habeas corpus action for a new trial currently sought by a convicted co-defendant. These are the very withholdings Exemption 7(A) is designed to protect.

Exemption 7(A) allows withholding of documents, "compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552 (b)(7)(A).  To qualify for this

withholding, however, EOUSA must not only establish that a law enforcement proceeding is pending, but also that a distinct harm could occur by releasing the information. See <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214, 224 (1978).

EOUSA may sustain their burden through the use of a Vaughn Index that describes the documents withheld and explains how the release of these documents would affect law enforcement proceedings. <u>See</u> <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973). The defendant agency is not required to compile an itemized list of the documents but may claim an exemption using a categorical approach, so long as the index defines the categories, the agency conducted a document by document review of the materials, and the agency explains how the release of each category would interfere with law enforcement proceedings. <u>See</u> <u>Bevis v. Department of State</u>, 801 F.2d 1386, 1389 (D.C. Cir. 1986). In addition to the required document by document review, the agency must also show that it evaluated the documents to determine if any were segregable from the excluded documents. <u>See</u> <u>Animal Legal Defense Fund, Inc. v. Department of the Air Force</u>, 44 F. Supp. 2d 295, 301 (D.D.C. 1999). In compiling the Vaughn index, the defendant agency may rely on sworn affidavits of individuals with particularized knowledge of the documents and summary judgment may be granted solely on the basis of these affidavits. <u>See</u> <u>Canning v. United States Dep't of Justice</u>, 848 F.Supp. 1037, 1042

(D.D.C. 1994)("Agencies are typically permitted to meet [their] heavy burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed." (quoting King v. United States Dep't of Justice, 830 F.2d 210,217 (D.C. Cir. 1987)).

EOUSA submitted the declaration of John Boseker as their Vaughn index.  In this declaration Mr. Boseker stated that EOUSA withheld the documents at the suggestion of the prosecutor, Assistant United States Attorney Gloria Bedwell. (Boseker Decl. ¶16.)  To sustain EOUSA's initial Exemption 7 (A) claim the agency must point to a specific pending or contemplated law enforcement proceeding.  The impending trial of two indicted co-conspirators and the habeas action of a convicted co-conspirator clearly satisfy this requirement.  Each is a law enforcement proceeding under Exemption 7(A) and the release of prosecutorial documents could potentially jeopardize the law enforcement personnel involved as well as the process itself.  As a result, EOUSA satisfied the initial burden imposed by Exemption 7(A) requiring the showing of a law enforcement proceeding and a possible harm to it.  The discussion below will address the categorical exemptions EOUSA claims in addition to Exemption 7(A).

### C. Grand Jury Material

EOUSA withheld 91 pages of Grand Jury materials pursuant to

Exemption 3 of the FOIA and Rule 6(e) of the Federal Rules of Criminal Procedure. Title 5 U.S.C. § 552(b)(3) permits the withholding of material prohibited from disclosure by another federal statute. In order to claim Exemption 3, the statute either "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(1994 & Supp. IV 1998). The statute cited in support of Exemption 3 must contain " a congressional purpose in the actual words of the statute" to exempt matters from disclosure. Reporters Comm. for Freedom of the Press v. United States Dep't of Justice, 816 F.2d 730,735 (D.C. Cir. 1987), rev'd on other grounds , 489 U.S. 749 (1989).

EOUSA cites Rule 6(e) of the Federal Rules of Criminal Procedure as its qualifying statute. Rule 6(e) directs that any attorney for the government or other court officer, "shall not disclose matters occurring before the grand jury." Fed. R. Crim. P. 6(e). To utilize Rule 6(e), however, EOUSA must establish a nexus between the release of the information and a revelation of protected grand jury information. See Senate of Puerto Rico v. United States Dep't of Justice, 823 F.2d 574, 584 (D.C. Cir. 1987). The critical issue to consider is whether the material withheld would expose elements of the grand jury's investigation

8

or reveal such items as the names of jurors or the substance of witness testimony. See Senate of Puerto Rico, 823 F.2d at 582, citing SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1382 (D.C. Cir. 1980).

EOUSA withheld 91 pages of Grand Jury transcripts under Exemption 3. (Boseker Decl. ¶37.) Release of these documents would provide Givner, and possibly his associates, with a full record of the Grand Jury's inner workings. These transcripts would identify witness names, reveal questions asked by the prosecutor, and give a general roadmap of the entire grand jury proceeding. Rule 6(e) is specifically tailored to prevent such disclosures, as the information released could not only compromise law enforcement efforts but also fail to protect both the privacy and safety of witnesses. EOUSA's Vaughn index adequately describes this category of documents withheld and EOUSA's reason for doing so. Therefore, EOUSA properly invoked Exemption 3 and withheld the Grand Jury documents in question.


D.  Attorney Work Product and Deliberative Process Materials

EOUSA asserts FOIA Exemption 5, in addition to Exemption 7(A), to withhold 188 pages of documents it lists as attorney work product or deliberative process materials. Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an

agency in litigation with the agency." 5 U.S.C. § 552(b)(5)(1994 & Supp. IV 1998).  The Supreme Court has read this language to "exempt those documents, and only those documents that are normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975).

The work product materials withheld by EOUSA include hand written attorney notes, trial preparation materials, trial research, directives between government attorneys, witness related notes and materials, draft pleadings and draft letters, and other notes made by, or at the direction of, an attorney. (Boseker Decl. ¶40.)  EOUSA argues that the release of these materials would interfere with the prosecution of Givner's co-conspirators or the retrial of the co-defendant now seeking a new trial.  Other courts in this district have previously held that notes, documents, and memoranda of these types qualify as exempted work product materials. See Spannaus v. United States Dep't of Justice, 942 F.Supp. 656 (D.D.C. 1999)(recognizing the privilege as applied to U.S. Attorney documents discussing grand jury proceedings); Slater v. Executive Office for United States Attorneys, No. 98-1663, 1999 U.S. Dist. LEXIS 8399, at 9 (D.D.C. May 24, 1999)(allowing exemption for a letter from an Assistant U.S. Attorney to FBI revealing investigative strategy); Rzeslawski v. United States Dep't of Justice, No. 97-1156, slip op. at 9 (D.D.C. July 23, 1998)(allowing privilege for an

10

Assistant U.S. Attorney's trial notes).  EOUSA's Vaughn Index
clearly indicates that these documents fall into the accepted
categories and addresses how each would affect the law
enforcement proceedings mentioned.  Furthermore, EOUSA has
examined the documents for segregability and determined that they
cannot be released without compromising the aforementioned law
enforcement proceedings.  As a result, EOUSA properly withheld
the work product documents from the plaintiff.  Though EOUSA
alternatively asserts a deliberative process exclusion on these
same documents, the clear applicability of the work product
doctrine does not force the Court to evaluate this claim.


### E.   Third Party Documents

#### 1. Exemption 6

EOUSA withheld third party documents pursuant to two
separate FOIA Exemptions.  The first withholding EOUSA claims is
based on FOIA Exemption 6, which allows the withholding of
"personnel and medical files and similar files" if disclosure
would "constitute a clearly unwarranted invasion of personal
privacy." 5 U.S.C. §552(b)(6)(1994 & Supp. IV 1998).  To apply
exemption 6, EOUSA must first show that the materials fall into
one of the groupings listed in the statute.  If that initial
requirement is satisfied, EOUSA must then show that the withheld
material would identify a specific individual. See Arieff v.

11

United States Dep't of the Navy, 712 F.2d 1426, 1467-68 (D.C. Cir. 1983).  Finally, EOUSA must show that the privacy interests of the individual outweigh any public interest in disclosure. See Reed v. NLRB, et al., 927 F.2d 1249, 1251 (D.C. Cir. 1991).

The 8 pages of documents withheld by EOUSA under Exemption 6 identify the names and other personal information of jurors and government witnesses.  In an examination to determine exemption 6 applicability, the term "similar files" is to be interpreted broadly, and any information about a particular individual meets the requirement. See United States Dep't of State v. Washington Post Co., 456 U.S. 595, 608 (1982).  Because EOUSA's withheld materials identify the names and personal information of particular individuals, their claim satisfies the threshold requirement.

After qualifying the withheld documents under Exemption 6, EOUSA must then identify the privacy interest and demonstrate how that interest outweighs any public interest in disclosure. See Ripskis v. United States Dep't of Housing and Urban Dev., 746 F.2d 1,3 (D.C. Cir. 1984).  EOUSA claims release of juror and witness names could subject the individuals to harassment as they could be contacted by Givner and his co-defendants regarding their testimony and other court proceedings. (Boseker Decl. ¶42.) Courts have previously held that witnesses testifying at criminal trials have a strong privacy interest both to protect their

privacy and their well being.  See McCutchen v. United States
Dep't of Health and Human Services, 30 F.3d 183, 189 (D.C. Cir.
1994).  In this case it seems particularly appropriate to
withhold the identities of these individuals.  Givner's co-
defendants are either still fugitives or seeking a new trial.
Either situation gives those defendants reason to contact Grand
Jurors and witnesses and invade their privacy.  In addition,
Givner has presented no valid public interest for release of
these documents.  As a result, EOUSA has met its burden of
justifying the privacy interest of the individuals and properly
withheld these 8 pages of documents.


                        2.   Exemption 7(C)

     EOUSA also cites FOIA Exemption 7(C), in addition to
Exemption 7(A), to withhold 230 pages of third party materials.
Exemption 7(C) offers protection for law enforcement materials
which, if disclosed, "could reasonably be expected to constitute
an unwarranted invasion of personal privacy." 5 U.S.C.
§552(b)(7)(C)(1994 & Supp. IV 1998).  To claim this exemption
EOUSA must identify and evaluate the privacy interests implicated
by the requested documents and then determine whether these
privacy interests would be compromised by disclosure.  See
Albuquerque Publ'g Co. v. United States Dep't of Justice, 726 F.
Supp. 851, 855 (D.D.C. 1989).  If it is determined that a privacy

                              13

interest is violated, an agency may make a categorical withholding of documents under exemption 7(C). See SafeCard Services v. SEC, 926 F.2d 1197 (D.C. Cir. 1991). Such a categorical withholding is particularly appropriate when the documents would reveal "subjects, witnesses, and informants in law enforcement investigations." National Magazine v. United States Customs Serv., 71 F.3d 885, 896 (D.C. Cir. 1995).

EOUSA claims this exemption for 230 pages of documents because they contain the identities and personal information of third party officials connected to the investigation of Givner and his co-defendants. These third party individuals consist of both law enforcement officers assigned to the case and other third party individuals that provided crucial information that led to Givner's arrest. EOUSA argues that the release of these materials would expose these individuals to unwarranted invasions of privacy and possibly even place some informants in danger. The agency further asserts that release of these documents could assist Givner's co-defendants in evading capture and assist the attorneys of the co-defendant seeking retrial.

Exemption 7(C) specifically covers this category of documents withheld by EOUSA. The agency's Vaughn index sufficiently describes the types of documents withheld and properly identifies the privacy interests of the law enforcement officials and sources. EOUSA also properly determined that the

14

privacy interests of these individuals could be compromised by release of the materials.  Furthermore, EOUSA reviewed the documents for segregability and released a portion of these materials that did not compromise any relevant privacy interests. As a result, EOUSA has met its burden under Exemption 7(C) and the material was properly withheld.

        F.   Confidential Informant Materials

The final group of documents withheld by EOUSA were 230 pages of materials that made references to confidential informants used during the investigation of Givner and his co-conspirators. (Boseker Decl. ¶52.)  EOUSA cites FOIA exemption 7(D) to exclude these documents from disclosure, arguing their release could hinder further prosecutorial action and also endanger the lives of these informants.

Exemption 7(D) offer protection for "records or information compiled for law enforcement purposes [which] could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552 (b)(7)(D).  Courts have granted a broad interpretation of Exemption 7(D) in order to protect sources and prevent critical information from "drying up." See Shaw v. FBI, 880 F.2d 58, 61 (D.C. Cir. 1984).  This interpretation includes any informant who has been promised confidentiality by a law enforcement official or when such when an assurance of

15

confidentiality can be inferred from the circumstances of the investigation. See S. Con. Rep. No. 93-1200, at 13. Applicability of Exemption 7(D) depends on the circumstances surrounding the statement rather than the risk of harm resulting from disclosure.  As a result, the "judiciary is not to balance interests under Exemption 7(D)." Parker v. Dep't of Justice, 934 F.32d 375, 380 (D.C. Cir. 1991).

EOUSA's Vaughn index states that the 230 pages of materials contain names of confidential sources and other materials that could be used to identify these individuals.  While there is no statement in the Vaughn index stating these assurances of confidentiality were explicit, the Supreme Court's decision in United States Dep't of Justice v. Landano held that certain circumstances support an inference of confidentiality. 508 U.S. 165, 177 (1993).  The factors that must be considered to determine whether implicit confidentiality exists are "the nature of the crime . . . and the source's relation to it." Id. at 179. Other courts in this district have applied the Landano standard and found implied promises of confidentiality in a number of drug trafficking cases. See Jefferson v. O'Brien, No. 96-1365, slip op. At 10 (D.D.C. Feb. 22, 2000), Mays v. DEA, No. 98-2496, slip op. at 4-5 (D.D.C. Sept. 14, 1999), Robinson v. DEA, No. 97-1578, slip op. at 11 (D.D.C. Apr. 2, 1998).  Due to the nature of Givner's crime and the inherent danger that release of

16

confidential information could present to confidential
informants, an inference of implicit confidentiality promises
exists.  It seems clear that EOUSA has properly claimed Exemption
7(D) to withhold these documents from Givner and protect the
identities of these confidential informants.


                    G.   Segregable Materials.

     The Court has an affirmative duty to ensure that any
documents which were reasonably segregable are released by EOUSA.
See Trans-Pac Policing Agreement v. United States Customs
Service, 177 F.3d 1022, 1028. (D.C. Cir. 1999).  EOUSA performed
a document by document review of the withheld materials to
determine if any withheld items could be partly or completely
segregated and released to Givner.  AUSA Gloria Bedwell
personally reviewed this material for documents that could be
segregated. (Boseker Decl. ¶57.)  AUSA Bedwell's review produced
ten full pages of segregable material and four pages that were
segregated after DEA agents' names had been deleted.  EOUSA
released the four pages of documents after several DEA agents'
names had been redacted to protect their privacy pursuant to
Exemption 7(C).  The ten full pages of material segregated by
AUSA Bedwell was then withheld by EOUSA pursuant to Exemption
7(C)and Exemption 7(D) to protect either third party privacy or
the names of law enforcement officials.  An agency may withhold

                              17

documents that contain nonexempt material if the redaction of
exempt material would "leave only essentially meaningless words
and phrases." Neufield v. Internal Revenue Service, 646 F.2d 661,
663 (D.C. Cir. 1981).  EOUSA's Vaughn index indicates that the
references to third parties were so intertwined with other
information that the names and references were impossible to
redact. (Boseker Decl. ¶52.)  The declaration by Mr. Boseker also
states that EOUSA determined all materials withheld after this
review contained information that was protected by the previously
stated exemptions. (Boseker Decl. ¶57.)  EOUSA's document by
document review and its efforts to release material show the
agency has met its burden of releasing all reasonably segregable
material.

III. Conclusion

For the reasons stated above, the defendant's Motion for
Summary Judgment will be GRANTED in a separate order issued this
day.

_____
Royce C. Lamberth
United States District Judge

Date: 3-1-01

18

_____