UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARTER, FULLERTON & HAYES, LLC | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. 07-1041(RCL) <br> ) |
| FEDERAL TRADE COMMISSION, | ) <br> ) |
| Defendant. | ) <br> ) |

**DEFENDANT FEDERAL TRADE COMMISSION'S
REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
RENEWED MOTION FOR SUMMARY JUDGMENT**

Plaintiff's Opposition to Defendant's Renewed Motion for Summary Judgment attacks the Commission's claimed Exemption for work-product and its segregability analysis. Plaintiff's Opposition is without merit. There is no genuine issue as to any material fact and the Commission is entitled to judgment as a matter of law. Its Renewed Motion for Summary Judgment should be granted.

I.  **THE COMMISSION PROPERLY INVOKED THE WORK-PRODUCT EXEMPTION**

In response to Plaintiff's FOIA request, the Commission withheld documents constituting work product. In partially granting the Commission's original Motion for Summary Judgment, this Court found that "defendant has met its burden in establishing a basis for withholding these documents under Exemption 5." See Carter, Fullerton & Hayes LLC v. Federal Trade Comm'n, --- F.Supp.2d ----, 2007 WL 3102182, *6 (D.D.C. Oct. 25, 2007). Ignoring this law of the case, Plaintiff continues to argue that the Commission's *Vaughn* index and supporting declarations are

insufficient to assess the validity of its claim of privilege.  As the Court has already ruled on the propriety of the FTC's withholding work-product documents and Plaintiff has given the Court no basis to revisit the issue, Plaintiff's claim lacks merit and should be rejected.  See Messenger v. Anderson, 225 U.S. 436, 444 (1912)("[C]ourts generally...refuse to reopen what has been decided.");  Laffey v. Northwest Airlines, Inc., 642 F. 2d 578, 585 (D.C. Cir. 1980)("To warrant divergence from the law of the case, a court must not only be convinced that its earlier decision was erroneous, it must also be satisfied that adherence to law of the case will work a grave injustice [citations omitted].").

## II.    COMMISSION'S SEGREGABILITY ANALYSIS DEMONSTRATES THAT FACTUAL INFORMATION WAS APPROPRIATELY WITHHELD

In its Memorandum in Support of its Renewed Motion for Summary Judgment, the Commission organized the documents into three groups for analysis.  This approach was appropriate because nearly all of the approximately 1,260 pages of documents at issue were either work-product, i.e. documents prepared in anticipation of litigation, or draft documents and staff recommendations, i.e., predecisional deliberative materials.  The remaining few documents, while deliberative in nature, did not fall into either of these categories.

**A. Work Product Materials.**   Approximately 236 of the pages at issue consist of work-product.  See R. 15, Def.'s Ex. D, Second Supplemental Declaration of Joan Fina (Dec. 3, 2007) ("Def. Exh. D, Fina Sec. Suppl. Dec."), ¶ 2.  Plaintiff concedes that, assuming Exemption 5 is properly invoked, the documents are appropriately withheld in their entirety.  Pl. Opp., p. 8.  Given the Court's finding, as discussed supra, the Commission is not required to conduct a segregability analysis of work product documents and has not done so.

**B. Draft Deliberative Materials and Recommendations.** Draft documents and associated recommendations comprise approximately 963 pages. See Def. Exh. D, Fina Sec. Suppl. Dec., ¶ 6. The FTC examined each page and concluded that no factual portions were segregable. Plaintiff acknowledges that "disclosure of factual information contained in the documents withheld by the FTC may undermine its policy decisions" but inconsistently argues that the "withheld documents clearly contain factual information that can be separated from deliberative portions of the withheld documents." Pl. Opp., pp. 3-5. This argument stems from Plaintiff's conjecture that the factual information contained in the documents is "precise factual information" (Pl. Opp., p. 1), "statistical" information (Pl. Opp., p. 6) or "data, pure factual information" ( Pl. Opp., p. 5).   This is not the case.

Nothing in the released documents even suggests, contrary to Plaintiff's assertion, that the factual information in the draft documents consists of "hard facts," such as price lists comparing the costs of a particular bottle of wine before and after the passage of internet wine sales legislation. And indeed, it does not.[1]  Nor do the underlying facts consist of a break-down of how much time a typical consumer spends going to the store as opposed to the time spent ordering a product on-line. The factual information does not provide specific percentages or dollar figures regarding the effect of internet sales on state treasuries, or quantify the effect on underage drinking.

As made evident by the FTC's declarations, the factual information as to allowing internet sales is whether internet sales will:   increase or decrease the availability of products available for purchase; make the product more or less expensive; be more convenient for the

---

[1] Plaintiff possesses the final documents that the FTC released. These provide a fair guide to the type of the factual information contained in the drafts.

customer; increase or decrease tax revenue; and have an effect on underage drinking.  Def. Exh. D, Fina Sec. Suppl. Dec., ¶ 7.  Further descriptions of such qualitative factual information will require actual disclosure of the information supporting the staff recommendations to the Commission.[2]

Release of such qualitative factual assessments made by the staff to support their recommendations exposes the Commission's deliberative process.  Release would reveal what factors the Commission credited and rejected in reaching a final decision or policy determination and would necessarily reveal the Commission's deliberations.  See Montrose Chemical Corp. v. Train, 491 F.2d 63 (D.C. Cir. 1974).  Also, if the Commission made its decision based on different facts or only some of the facts articulated by staff, withholding the underlying recommendations serves to avoid public confusion as to the agency's decisions as opposed to agency official's opinions or recommendations.  See Russell v. Department of Air Force, 682 F.2d 1045, 1048-49 (D.C.Cir.1982) (withholding documents to prevent public from "misconstruing" officer's views as agency views); Fisher v. United States Dep't of Justice, 772 F. Supp. 7, 10-11 (D.D.C.1991) (withholding documents "to prevent public confusion that might be caused by disclosure of reasons and rationales that were not ultimately the grounds for the agency's action"), aff'd, 968 F.2d 92 (D.C.Cir.1992).

The draft nature of the documents provides an additional reason for withholding them.  By comparing factual materials within drafts to final versions available to the public, one can

---

[2] For example, releasing a staff recommendation stating that internet wine sales increase the variety of available products at lower costs and is more convenient necessarily reveals the recommendation.  Conversely, releasing a staff recommendation stating that internet wine sales have a negative effect on state tax revenue and increase underage drinking necessarily reveals the recommendation.  This is why the factual information is inextricably intertwined with the deliberative process and is non-segregable.

reconstruct the decision-making process by comparing material in the two versions that was kept, moved, or edited.

To support its argument, Plaintiff asserts that any factual information that was contained in a draft document but did not make it into the final version "would be lost to the general public." Pl. Opp., p. 7.  This argument misapprehends Exemption 5 as it applies to this case.  No factual information is "lost" to the public because the public is not entitled to it in this form.  To the extent this assumed body of information exists at all, it exists independently of the draft documents that Plaintiff seeks.  Moreover, this concern apparently stems from Plaintiff's unsupported belief that release of the drafts would reveal "the FTC's predetermined policy goals in support of the alcohol-related industry and/or direct shipment of wine" (id.) and "evince a selection of certain data to achieve a preconceived policy goal" (id. at p. 3).  However, the Commission, like any federal agency, has the authority to establish its own policies and make decisions relating to its mission.  In developing those policies and decisions, the Commission relies on information provided in staff recommendations.  Selection of certain facts among a menu of facts or rejection of other facts to support its policy or decision is a deliberative process entitled to protection.  Neither Plaintiff nor the general public is entitled to look behind the deliberative curtain.  Plaintiff, like the general public, is only entitled to the facts actually relied upon by the FTC as espoused in its final decision or policy determination.

The very process by which a draft evolves into a final document constitutes a deliberative process warranting protection.  "Materials that allow the public to reconstruct the predecisional judgments of the administrator are no less inimical to Exemption 5's goal of encouraging uninhibited decision making than materials explicitly revealing his or her mental processes." National Wildlife Federation v. United States Forest Service, 861 F.2d 1114, 1122 (9th Cir.

1988). Withholding drafts of documents in their entirety is essential to the protection of the deliberative process. The FTC properly withheld the entirety of the draft documents, their associated recommendations, and underlying factual information.

      **C. Documents Other than Work Product, Drafts, and Recommendations.** After accounting for the documents comprising work product and draft materials, the remainder consists of approximately 61 pages. See Def. Exh. D, Fina Sec. Suppl. Dec., ¶¶ 14, 17, 20, 23, 26, and 29. Of these pages, Plaintiff provides specific argument as to 14 pages relating to a speech given by Ms. Olhausen to the Wine Institute, an internal e-mail concerning state legislation, and an e-mail identifying possible industry contacts.

      1. *Olhausen Speech Documents*. The documents relating to Ms. Olhausen's speech are located in the FOIAXpress database at:

| Directory | Pages |
|---|---|
| Maureen Olhausen | 1-7, 16-17, 24-26 |

Plaintiff argues that it is entitled to the drafts of the speech because the Commission has not produced the final version of the speech. Pl. Opp., p. 7. The Court, however, has held that the FTC has made a good faith effort to search for requested records, using methods which were reasonably expected to produce the information requested, and concluded the search was adequate to fulfill the FTC's obligations under FOIA. Memorandum Opinion, p. 10. This suggests that the final version of the speech was not produced because the speech was not transcribed and Ms. Olhausen did not retain a copy. This circumstance does not compel the release of the draft speech. Even though the final text of the speech is not available, the draft of the speech continues to be a predecisional, i.e., deliberative, document protected from disclosure under Exemption 5.

Failure to produce a transcript does not require release of the drafts. Pl. Opp., p. 8. Any argument to the contrary lacks merit. The applicability of Exemption 5 does not turn on whether a final document has been released. To the extent Plaintiff is arguing that it has a particularized need for any information contained in the drafts that trumps the FTC's claim under Exemption 5, such an argument has no place in FOIA. Unlike discovery disputes, agency production of a document under FOIA does not turn on a requestor's showing of a particularized need. Mead Data Central, Inc. v. Department of the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977).

2. *Internal E-Mail Regarding Pending Legislation*. Plaintiff identifies a particular e-mail about a legislative matter as problematic and questions why certain parts of the e-mail could not be released such as "the bill, the name of the state, and/or even the mere title of the legislation." Pl. Opp., p. 6.

| Directory | Pages |
|---|---|
| Internet Wine Correspondence | 234 |

The fact is that the e-mail does not contain the name of the bill or the title of the legislation. The e-mail provides an FTC employee's analysis of the sponsor's rationale for parts of the legislation and expresses the author's views on the arguments of the opponents of the legislation. The e-mail was intended to assist the recipient in formulating a recommendation to the Commission to take official action with respect to legislation pending in other states. Def. Exh. D, Fina Sec. Suppl. Dec., ¶¶ 21. Revelation of the state name could provide a requestor some insight into the FTC's deliberative processes, as it shows what staff was considering in making their recommendations to the Commission. Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566

F.2d at 261 n. 55; see Neufield v. Internal Revenue Service, 646 F.2d 661, 663 (D.C. Cir. 1981) (deciding that agencies may withhold nonexempt information if it amounts to "essentially meaningless words and phrases).

    3.  *E-Mail Identifying Industry Sources*.  Plaintiff identifies another e-mail as problematic and argues that the names of state regulatory officials serving on various liquor boards should be released.  Pl. Opp., p. 6.

| Directory | Pages |
|---|---|
| Maureen Olhausen | 60 |

The purpose of the e-mail was to identify individuals whom the senior official might contact to obtain information about direct shipment legislation for the purpose of formulating policy recommendations to the Commission.  Def. Exh. D, Fina Sec. Suppl. Dec., ¶¶ 24.  If the document were simply a list of state regulatory officials, the FTC would agree that the document could properly be released as it would be merely factual information.  This document, however, is not just a list of names.  Id.  Release of this information could potentially reveal the processes by which the senior official formulated his or her policy recommendations to the Commission or cause confusion as to the inputs actually received.

### IV.    CONCLUSION

    For the reasons set forth both above and in the Commission's initial memoranda and the Memorandum in Support of its Renewed Motion, this Court should grant the Commission's Renewed Motion for Summary Judgment.

Respectfully Submitted,

/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/ Beverly M. Russell
_____
| | |
|---|---|
| Of Counsel: | BEVERLY M. RUSSELL, D.C. Bar #454257 |
| WILLIAM BLUMENTAHL | Assistant United States Attorney |
| General Counsel | U.S. Attorney's Office for the District |
| | of Columbia, Civil Division |
| JOHN F. DALY | 555 4th Street, N.W., Rm. E-4915 |
| Deputy General Counsel for Litigation | Washington, D.C. 20530 |
| | Ph:  (202) 307-0492 |
| DAVID C. SHONKA | Fax: (202) 514-8780 |
| Assistant General Counsel for Litigation | E-Mail: beverly.russell@usdoj.gov |

## **CERTIFICATE OF SERVICE**

I certify that the foregoing ***Defendant Federal Trade Commission's Reply to Plaintiff's Opposition to Defendant's Renewed Motion for Summary Judgment*** was served upon Plaintiff by the Court's Electronic Case Filing System, to:

John E. Drury
Law Offices of John E. Drury, PC
1900 L Street, N.W., Suite 303
Washington, D.C. 20036
jedrury@aol.com

on this 16th day of January, 2008.

/s/ Beverly M. Russell
BEVERLY M. RUSSELL
Assistant United States Attorney