**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————
                                                              )
**CARTER, FULLERTON & HAYES, LLC** )
                                                              )
                      **Plaintiff,**               )
                                                              )
            **v.**                                 )            **Civil No. 07-1041 (RCL)**
                                                              )
**FEDERAL TRADE COMMISSION,**       )
                                                              )
                    **Defendant.**              )
———————————————————————)

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on defendant's Second Motion [31] for

Summary Judgment.  In sum, plaintiff Carter, Fullerton & Hayes, LLC brought the

original action pursuant to the Freedom of Information Act, 5 U.S.C. § 552, for injunctive

relief and seeking the disclosure and release of agency records withheld from plaintiff by

defendant Federal Trade Commission ("FTC" or "defendant").  Plaintiff's FOIA request

essentially seeks the disclosure of documents pertaining to FTC's involvement with

alcohol issues and the alcohol industry.

Defendant's first motion for summary judgment was granted in part and denied in

part.  This Court denied this summary judgment motion without prejudice with regard to

its segregability analysis as to information withheld in full pursuant to Exemption 5 of the

Freedom of Information Act ("FOIA").  Defendant's summary judgment motion was

granted as to all other claimed exceptions.  The Court further allowed defendant to

submit a new motion for summary judgment containing a more detailed explanation as to

why no factual portions can be segregated from the documents withheld in full under

FOIA Exemption 5.  Defendant's Second Motion [31] for Summary Judgment is now

before the Court.  Before the defendant filed the instant motion, it located and produced

further documents between June, 2008 and August, 2008 in response to plaintiff's FOIA

requests.

Upon consideration of defendant's motion, plaintiff's opposition, defendant's

reply brief, the applicable law, and the entire record herein, the Court concludes that

defendant's motion shall be granted. The Court's reasoning is set forth below.

## I. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *Mills v. Winter*, 540 F. Supp. 2d 178, 183 (D.D.C. 2008) (Friedman, J.);

*Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).

To determine if there is any genuine issue of material fact, this Court is to view

the record, facts, and all reasonable inferences in the light most favorable to the non-

moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970).  A genuine

issue of material fact is one which could affect the outcome of the litigation.  *Celotex*,

477 U.S. at 322; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment may be granted in a FOIA case when, viewing the facts in the

light most favorable to the plaintiff, there is no genuine issue of material fact with regard

to the agency's compliance with the Freedom of Information Act.  *Steinberg v.*

*Department of Justice,* 23 F.3d 548, 551 (D.C. Cir. 1994) (citing *Weisberg v. Department*

*of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984), *reh'g denied,* 763 F.2d 1436 (D.C. Cir.

1985)).

## II. DISCUSSION

### A. Defendant's FOIA Exemption 5 segregability analysis with regard to documents withheld in full from its original production

Defendant claimed in its first motion for summary judgment that documents

withheld in full pursuant to FOIA Exemption 5 are nonsegregable.  Exemption 5 does not

require the disclosure of "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party other than an agency in litigation with the

agency."  5 U.S.C. § 552(b)(5).  FOIA requires that "[a]ny reasonably segregable portion

of a record shall be provided…after deletion of the portions which are exempt." 5 U.S.C.

§ 552(b).  This Court gave defendant a second opportunity to "sufficiently explain why

there was no reasonable means of segregating factual material from exempt material."

(Mem. Op. [12] at 21.) Defendant has attempted to do so in its Second Motion for

Summary Judgment.

Defendant argues that the FTC conducted a reasonable search, provided all

responsive and non-exempt materials, and disclosed reasonably segregable factual

portions of these documents.  When searching for requested documents pursuant to

FOIA, "the agency must show that it made a good faith effort to conduct a search for the

requested records, using methods which can be reasonably expected to produce the

information requested." *Campbell v. Department of Justice*, 164 F.3d 20, 27 (D.C. Cir.

1998), *quoting Oglesby v. Department of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

This Court found that the FTC engaged in the requisite good faith effort.  The actual

results are less important than the search itself, and "[a]n agency fulfills its obligations

under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).

Defendant further maintains that it has met its obligations under FOIA and is thus entitled to judgment as a matter of law. To withhold documents responsive to a FOIA request, an agency must show that the withheld materials fall squarely within one of FOIA's statutory exemptions. *Weisberg v. Department of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1984). In order to make such a showing, an agency may submit affidavits and declarations describing the documents withheld and the statutory basis for the withholdings. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir 1973). *Vaughn* essentially requires agencies to prepare an itemized index correlating withheld documents or portions of documents with a FOIA exemption as well as the relevant part of the agency's nondisclosure justification.

In addition, and central to defendant's summary judgment motion, any reasonably segregable portions of documents must be disclosed once the exempt portions have been redacted. *Oglesby v. Department of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). "[I]t is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability or the lack thereof." *Schiller v. NLRB*, 964 F.2d 1205, 1210 (D.C. Cir. 1992). Defendant's Second Motion for Summary Judgment has attempted to fix the Court's observation that "defendant's generic declaration that deliberative factual content is inextricably intertwined with the basis for withholding and is therefore, not segregable, does not constitute a sufficient explanation of segregability."

(Mem. Op. [12] at 21.) FTC's second supplementary declaration and Vaughn Index do, indeed, provide additional information about documents withheld in their entirety beyond simple assertions that the factual information is inextricably intertwined with exempt portions.

To show that all reasonably segregable materials have been released, an agency must provide a reasonably "detailed justification" rather than mere "conclusory statements." *Mead Data Center, Inc. v. Department of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).  This is to assist the Court in conducting *de novo* review of defendant's Vaughn Index.  After defendant's submission of its Second Motion for Summary Judgment, plaintiff still argues that "defendant has not provided a detailed justification as to why the FTC is incapable of segregating out the factual information contained in the documents at issue." (Pl. Mem. in Opp. to Def.'s Second Mot. for Summ. J., 11.)  The Court will now address defendant's segregability analysis as to previously produced responsive documents.

Defendant's simple assertion that certain factual information withheld is "inextricably intertwined" is not a proper "detailed justification" for nonsegregability. *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). However, factual information may in fact be "inextricably intertwined with exempt portions" so that disclosure is not required. *Mead Data Center*, 566 F.2d at 260; *Wolfe v. Dep't of Health and Human Services*, 839 F.2d at 768, 774-76 (D.C. Cir. 1988).  This is to prevent the potentially harmful effect the release of such information could have on agency deliberations.  In addition, "factual material is itself privileged when it appears within documents that are attorney work-product. If a document is fully protected as

work product, then segregability is not required." *Judicial Watch, Inc. v Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005).  According to the Second Declaration of Joan Fina, the supervisory attorney for the FTC's FOIA Unit, five of defendant's fifteen directories containing documents from the FTC's initial production withheld in their entirety under Exemption 5 were properly withheld under the work product privilege. (Joan Fina Decl. II, ¶ 2.)

Further, defendant argues that much of the factual information in documents withheld in full are inextricably intertwined with the deliberative process because "[r]evealing the factual data relied upon by the Commission's staff would enable the reader to deconstruct the staff's thought process and deliberations, and reveal the ultimate recommendation and expose the analysis of the staff prior to the Commission making a decision." (Def.'s Second Mot. for Summ. J., 14.)  Such withheld information has been sufficiently detailed and justified.  Indeed, "revelation of the facts themselves, or more specifically, what the author decided and selected as pertinent facts or information, would expose the deliberative process." (Def. Reply Mem. in Support of Def.'s Second Mot. for Summ. J., 7.)

Defendant further explains, "Withholding drafts of documents in their entirety is essential to the protection of the deliberative process. It also serves to avoid public confusion as to the agency's decisions as opposed to agency official's opinions or recommendations."[1] (Def.'s Second Mot. for Summ. J., 14.)

---

1 Defendant notes, by way of example: (1) draft legislator letters withheld that are different versions of the letter that was ultimately sent to the legislators; and (2) draft press releases containing "extensive edits that include handwritten notes and extensive strikeouts of text reflecting the thought process of a senior FTC official in deciding what information should be publicly released. These edits were incorporated in the publicly released version of the document." (Def. Second Mot. for Summ. J., 15-16.)

Finally, defendant withheld several other documents in full as nonsegregable, including "legal memoranda, staff attorney notes taken during various meetings, notes prepared to aid in the delivery of a Commission sanctioned speech, as well as other miscellaneous documents." (*Id.* at 16.)  It is the determination of this Court that defendant has adequately explained why the factual information contained in these remaining documents is nonsegregable and thus properly withheld in full.

Plaintiff only specifically addresses defendant's nondisclosure of materials related to a speech of Maureen Olhausen to the Wine Institute, and plaintiff is correct in that the *final copy* of the speech cannot be withheld under the attorney-client work product rule because its contents have been voluntarily disclosed to the public.  However, for the reasons given by defendant, *draft* documents leading up to the final speech were properly withheld in full because "revelation of the facts themselves, or more specifically, what the author decided and selected as pertinent facts or information, would expose the deliberative process." (Def.'s Reply Mem. in Support of Def.'s Mot. for Summ. J., 7.) Further, the "documents leading up to the final speech should not be released because their disclosure would allow the public to reconstruct the predecisional judgments of the speaker and reveal his or her mental processes." (Def.'s Second Mot. for Summ. J., 18.) "We deem a document predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006).  As is required, defendant has sufficiently shown these documents to be both predecisional and deliberative.

Yet, the final version of the Olhausen speech is not similarly protected.
Defendant contends that, after a good faith search, a final version of the speech was not
found and that "[t]his suggests that a final version of the speech was not, in fact,
transcribed or Ms. Olhausen did not retain a copy of a 'final version' of her speech."
(Def. Reply Mem. in Support of Def.'s Second Mot. for Summ. J., 8.)  Therefore,
although the final version of this speech is not afforded the same protection as the drafts,
FTC's good faith search was adequate—as is further discussed below.

**B. FTC's recent production of previously unidentified documents**

The plaintiff's FOIA request sought, in part:

> [A]ll documents…relating to malt beverages; malt beverage manufacturers;
> and distilled spirits wholesalers/distributors; malt beverage, wine and
> distilled spirits retailers; any organizations representing the aforementioned;
> and any entity communicating with FTC or any division thereof…on any
> aspect of the regulation of alcohol from January 2002 to present."

(Def. Exhibit A, ¶ 6.)

Defendant located numerous documents in early July of 2008 that it recognized
might be pertinent to this litigation as responsive to plaintiff's FOIA requests. (Def.
Second Mot. for Summ. J., 4.)  Defendant states that Fina contacted the FTC's Northwest
Regional Office in Seattle to determine if any documents responsive to plaintiff's FOIA
requests had been overlooked. (Joan Fina Decl. III, ¶ 6.)  Defendant further maintains:

> On June 4, 2008, Ms. Fina learned that multiple boxes of documents
> existed that had not previously been produced to Plaintiff…[and] [w]ithin
> a day of discovery of these documents, the FTC notified this Court of their
> existence, and immediately undertook steps to obtain and review these
> documents.

(Id at 7.)  The defendant did indeed notify the Court of this discovery on June 5, 2008 and
conducted a review of these and other documents for further production of responsive

and non-exempt materials.  Defendant explains how it overlooked these materials during

its initial search:

> Although Plaintiff's FOIA request sought documents related to
> regulation of 'alcohol,' 'wine,' 'spirits' and 'malt beverages,'
> Plaintiff did not ask the FTC to search for documents containing
> the term 'liquor.' Use of the search terms 'alcohol,' 'wine,' 'spirits,'
> and 'malt beverages' would not have turned up the Northwest
> Regional Office's investigation in the MMS Database.

(Def. Reply Mem. in Support of Def.'s Second Mot. for Summ. J., 6; Joan Fina Decl. III,

¶ 14.)

Plaintiff asserts that defendant's "account of its failure to produce the responsive

documents earlier to the plaintiff strains credibility," essentially arguing that either (1) the

purpose of FOIA is frustrated if a requesting party needs to request a "magic word" (i.e.

liquor) to yield relevant search results, or (2) defendant acted in bad faith or conducted an

insufficient search. (Pl. Mem. in Opposition to Def.'s Second Mot. for Summ. J., 6.)

Plaintiff maintains that the FTC did not, in fact, perform an adequate search for

responsive documents in response to plaintiff's October 13, 2006 FOIA request given

these belatedly discovered documents in the FTC's Northwest Regional Office.

However, defendant ultimately did search for and disclose these newly discovered

materials relevant to plaintiff's FOIA requests.  Because there is no evidence to the

contrary, other than mere conclusory accusations by plaintiff, it is the determination of

the Court that the FTC acted in good faith and conducted a reasonable search.  The initial

search was sufficient under FOIA and, once the FTC was notified of additional

potentially responsive materials, they conducted an additional search in the FTC's

Northwest Regional Office.  "An adequate search may be limited to places most likely to

contain responsive documents." *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F.

Supp. 2d 1, 10 (D.D.C. 2004) (Huvelle, J.) (citations omitted).  Again, as stated, the adequacy of a FOIA search is not judged on results, but rather on the good faith search itself.

Therefore, the FTC's late discovery and production of additional responsive and non-exempt documents will not prevent this Court from going forward on the substantive nature of defendant's motion for summary judgment with regard to defendant's analysis as to materials exempt from disclosure under FOIA.  The Court will now turn to FTC's application of FOIA exemptions to these recently discovered documents.

Plaintiff maintains that the FTC has wrongfully withheld documents under Exemptions 5, 7, and 3, and that the FTC's Vaughn Index is inadequate to allow the Court to perform a *de novo* review of the exemptions.  However, as explained below, defendant has properly applied the FOIA exemptions.

### 1. Defendant's Application of FOIA Exemption 5

Exemption 5 protects disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  Courts have "construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including "materials which would be protected under the attorney-client privilege, the attorney work-privilege, or the executive 'deliberative process privilege.'" *Taxation With Representation Fund v. Internal Revenue Serv.*, 646 F.2d 666, 676 (D.C. Cir. 1981) (citations omitted).

Agencies invoking Exemption 5 frequently rely on the deliberative process privilege, the purpose of which "is to prevent injury to the quality of agency decisions"

by allowing "the withholding of all papers which reflect the agency's group thinking in the process of working out its policy determining which its law shall be." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152-53 (1975) (citation omitted).  The withheld documents must be predecisional and deliberative.  *See Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  A predecisional document must be "actually antecedent to the adoption of an agency policy." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978).  For a document to be deliberative, it must be a "direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).  Plaintiff maintains that the defendant has improperly invoked Exemption 5 in withholding documents in whole or in part on the basis of the deliberative process privilege.

Plaintiff argues that defendant has not identified any FTC policy to which many of these documents are antecedent to, and that many of the withheld documents are non-exempt internal communications because they are not both predecisional and deliberative. (Pl. Mem. in Opp. to Def.'s Second Mot. for Summ. J., 16.)  For instance, plaintiff cites generally to Subfolders 4B and 7E of the Vaughn Index.  Contrary to plaintiff's assertion, however, defendant's reasoning for withholding documents in these sections are sufficiently explanatory for the Court to discern *sua sponte* their predecisional and deliberative nature.  Because plaintiff has provided no factual evidence or examples to the contrary, the Court finds that the withheld documents were both deliberative and predecisional and therefore properly withheld under FOIA Exemption 5

In addition, plaintiff is incorrect in its assertion that defendant needs to identify a specific FTC policy decision to which many of these documents are antecedent to.

Indeed, the "need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151-52 n.18 (1975).

### 2. Defendant's Application of FOIA Exemption 7(A)

Exemption 7(A) authorizes agencies to withhold "records or information complied for law enforcement purposes, but only to the extent that production of such law enforcement records or information…could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552 (b)(7)(A).  "In originally enacting Exemption 7, Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their case."  *Nat'l Labor Relations Board v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978).  To properly withhold materials pursuant to Exemption 7(A), and agency must show that (1) a law enforcement proceeding or investigation is pending or prospective, and (2) the release of the information could reasonably be expected to cause some articulable harm. *See Id.*

Plaintiff maintains that defendant has not properly invoked Exemption 7(A) because the FTC is only empowered to prevent persons, partnerships, or corporations from engaging in methods of unfair competition, and "not empowered to launch an extra-jurisdictional investigation of state alcohol agencies and then cover its tracks by invoking FOIA exemptions (b)(3) and (b)(7)(A)." (Pl. Mem. in Opp. to Def.'s Second Mot. for Summ. J., 17-18.)  Plaintiff also argues that defendant's alleged law enforcement

proceeding or investigation was not "within the agency's authority," as is required to invoke Exemption 7. (Pl.'s Mem. in Opp. to Def.'s Second Mot. for Summ. J., 18.)

However, because plaintiff has provided no evidence to the contrary, this Court finds that defendant does not lack "the authority to conduct an investigation into possible anticompetitive effects of state liquor control board regulations." (Def. Reply Mem. in Support of Def.'s Second Mot. for Summ. J., 11.)  Indeed, Section 5 of the Federal Trade Commission Act ("FTC Act") empowers and directs the FTC "to prevent persons, partnerships, or corporations…from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(b).  Defendant's law enforcement investigations of possible anticompetitive effects of state liquor control board regulations falls within its authority under the FTC Act.

Plaintiff cites to a Supreme Court decision, which noted, "If an adverse effect on competition were, in and of itself, enough to render a state statute invalid, the States' power to engage in economic regulation would be effectively destroyed." *New Motor Vehicle Dealer Board of Cal. v. Orrin W. Fox Co.*, 439 U.S. 96, 111 (1978).  Yet, an investigation into anticompetitive effects of state liquor control board regulations is not "in and of itself" seeking to render a specific state statute invalid.  Rather, it falls within the FTC's authority under the FTC Act.  While states have substantial control over the importation and sale of alcohol, this power does not preclude the FTC from an investigation into unfair methods of competition *in or affecting commerce*.  Indeed:

> [T]here is not bright line between federal and state powers over
> liquor. The Twenty-first Amendment grants the States virtually
> complete control over whether to permit importation or sale of
> liquor, and how to structure the liquor distribution system. Although
> States retain substantial discretion to establish other liquor
> regulations, those controls may be subject to the federal commerce

power in appropriate situations.

*California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110 (1980).  Because it is this Court's determination that defendant is not without authority to investigate anticompetitive effects of state liquor control board regulations, and this does not encroach on the States' interest in substantially regulating alcohol distribution, the Court's analysis will now turn to the two showings an agency must make to properly withhold materials under Exemption 7(A).

First, defendant has shown that a law enforcement proceeding or investigation is pending or prospective.  Plaintiff's primary objection to this is that "[b]ecause the FTC lacks the authority to investigate the States' exercise of their 21st Amendment powers, the FTC may not withhold any information pursuant to exemption 7(A)." (Pl.'s Opp. to Def.'s Second Mot. for Summ. J., 20.)  However, this argument has been discussed and dismissed above.  The Court finds that defendant has shown that a law enforcement investigation is pending or prospective into state liquor control boards.  Indeed, even plaintiff concedes that defendant has "disclosed the investigations in Oklahoma, Connecticut, Missouri, and New York in the documents released to the plaintiff." (Pl.'s Opp. to Def.'s Second Mot. for Summ. J., 21.)

Second, defendant has shown that the release of the information could reasonably be expected to cause some articulable harm.  In accordance with Exemption 7, defendant has explained with reasonable specificity and clarity, without undermining the purpose of the FOIA exemptions, that the withheld materials "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).  Indeed, Fina's FTC

declaration states that the release of materials pertaining to the state liquor control board

investigation could:

> alert potential targets of investigation, create a chilling effect
> on potential witnesses and sources of information, make more
> difficult the future investigation of potential anti-competitive
> conduct, reveal investigational methods and theories, hamper the
> free flow of ideas between Commission employees and supervisors,
> or hinder the Commission's ability to shape and control investigations.

(Joan Fina Decl. III, 11.)

### *3. Defendant's Application of FOIA Exemption 3*

Exemption 3 allows an agency to withhold information that is specifically exempt

from disclosure by another statute. 5 U.S.C. § 552(b)(3).  The statute must require that

the matters be withheld from the public in such a way as to leave no discretion on the

issue, or establish particular criteria for withholding or refer to specific types of matters

to be withheld. *Id.*  In deciding Exemption 3 applicability, "the sole issue for decision is

the existence of a relevant statute and the inclusion of withheld material within that

statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978), *cert. denied*, 445

U.S. 927 (1980).

Defendant maintains that the FTC's investigations, discussed *supra*, are non-

public. (Joan Fina Decl., III, ¶19.)  Further, defendant states that the FTC "has claimed

Exemption 3 for three documents submitted to the FTC in connection with the Northwest

Regional Office's investigation of potential anticompetitive effects of state liquor control

board regulations—an investigation that is still in progress." (Def. Second Mot. for

Summ. J., 25; *see also* Joan Fina Decl., III, ¶ 18-22.)

Plaintiff contests FTC's application of Exemption 3 through an analysis of a

Second Circuit opinion, *A. Michael's Piano, Inc. v. FTC*, arguing that Section 21(f) of the

FTC Act can not be applied to Exemption 3 as defendant does. The Second Circuit held

that the FTC may withhold documents under Section 21(f) and Exemption 3 according to

a three-part test:

> We think a workable standard is one that permits the FTC properly
> to invoke § 21(f) by showing that (1) it had requested documents that
> were (2) relevant to an ongoing investigation within its jurisdiction
> and (3) the documents could have been subpoenaed had the party
> refused to comply with the FTC's requests. The FTC has authority to
> issue civil investigative demands or subpoenas…so long as the demand
> for information is signed by a Commissioner pursuant to a Commission
> resolution.

*A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138 (2nd Cir. 1994).  Section 21(f) of the FTC

Act provides that:

> Any material which is received by the Commission in any
> investigation, a purpose of which is to determine whether any
> person may have violated any provision of the laws administered
> by the Commission, and which is provided pursuant to any
> compulsory process under this subchapter or which is provided
> voluntarily in place of such compulsory process shall not be
> required to be disclosed under section 552 or Title 5, or any other
> provision of law.

15 U.S.C. § 57b-2(f).  Defendant's sworn declaration of Fina and the Vaughn Index,

taken together, reasonably detail a proper invocation of Exemption 3.  Even if this Court

were to apply the Second Circuit's three-part test, defendant has met its burden.

### III. Conclusion

For the foregoing reasons, defendant's second motion for summary judgment will

be granted in a separate order issued this date.

Signed by Royce C. Lamberth, Chief Judge, on July 24, 2009.